Robert J. MICHELSEN and Naoma Jean Michelsen, Plaintiffs/Appellants,

v.

Thomas V. STANLEY, Jr., M.D. and J. Hays Brantley, M.D., Defendants/Appellees.

Court of Appeals of Tennessee, Western Section.

Dec. 13, 1993.

Application for Permission to Appeal Denied by Supreme Court May 16, 1994.

James F. Schaeffer, Sr., Memphis, for appellants.

David M. Cook, The Hardison Law Firm, Memphis, for appellees.

HIGHERS, Judge.

This is a medical malpractice case brought by plaintiffs, Robert J. Michelson, and his wife, Naoma Jean Michelson, against defendants, Drs. Thomas V. Stanley and J. Hays Brantley, for their failure to diagnose and treat an infectious disease which destroyed plaintiff Robert J. Michelson's hip joints. The trial court entered a jury verdict in favor of defendants. After the trial court denied their motion for a new trial, plaintiffs appealed. The issues presented for our review are: (1) Whether the trial judge aptly performed his function as thirteenth juror approving the jury verdict. (2) Whether the court erred in refusing to grant a new trial because the jury considered extraneous evidence and/or because one juror was coerced into going along with a verdict for the defendant.

Plaintiff is presently 78 years old. On January 28, 1987, plaintiff underwent a surgical procedure to drain a perirectal abscess. As would later become evident, plaintiff contracted a bacterial infection during this procedure which eventually destroyed his hip joints. The evidence at trial focused on whether defendants' failure to diagnose and treat the infection was a deviation from the applicable standard of care. A brief account

of the facts is as follows. Several days after the January 28th surgery, plaintiff began experiencing pain in his hips and abdomen. He was admitted to the hospital on February 5, 1987, where he remained until his discharge on April 18, 1987. Plaintiff underwent exploratory surgery for an abdominal aortic aneurysm which was performed by Dr. Alim Khandekar, a cardiovascular surgeon. During this surgery, Dr. Khandekar discovered a closed-loop bowel obstruction which required emergency repair, and he called in Dr. Thomas Stanley, a general surgeon, to complete the surgery. Thereafter, Dr. Stanley was in charge of plaintiff's medical treatment. Plaintiff began to run a fever, and he continued to complain of pain in his hip and groin area. Numerous tests, including blood and urine tests, MRIs, X-rays, cat scans and a bone scan were performed on plaintiff in an effort to determine the cause of his pain. Dr. Stanley consulted Dr. Hays Brantley, an internal medicine specialist, to assist in antibiotic treatment and the coordination of plaintiff's medical care. Dr. Stanley consulted an orthopedic surgeon, Dr. Mike Lynch, to determine whether an infection was present in plaintiff's hip joints. Drs. Stanley and Brantley determined that there was some infection or abscess in plaintiff's right and left hip area and inflammatory fluid was drained during the latter part of March. The drainage process resulted in marked improvement. Dr. Lynch reported that there was no infection in plaintiff's hip joints but that plaintiff's pain was due to severe arthritis in his hip joints. Drs. Stanley and Brantley relied on Dr. Lynch's opinion. Although an April 12th cat scan revealed some fluid reaccumulation in the hip area, Dr. Stanley determined that plaintiff's condition had improved such that he could be discharged on appropriate antibiotic therapy and home care treatment. Plaintiff's discharge was originally set for April 17, but plaintiff was not discharged until April 18 because of an increase in his temperature and continued pain in his groin and hip area. Drs. Brantley and Lynch concurred in the discharge.

Mrs. Michelson testified that plaintiff was in excruciating pain when discharged on April 18th. On April 22nd, Mrs. Michelson phoned Dr. Stanley because fluid was draining out of one of plaintiff's incisions where catheters had been placed to drain the infection or inflammatory fluid and, as a result, Dr. Stanley treated plaintiff in the emergency room on April 24th. Plaintiff saw Dr. Stanley April 28th for a regular office visit and nothing new about plaintiff's condition was determined. Plaintiff continued to suffer excruciating pain in his hip area. Plaintiff began draining a pus-like material at a place near his navel and, as a result, Dr. Stanley saw him in the emergency room on May 5th and a cat scan was performed. No new diagnosis was made. Plaintiffs returned to Dr. Stanley's office on May 13th, but were apparently not given any new diagnosis or treatment and plaintiff was not hospitalized. On May 21st, plaintiff was seen by Dr. Joseph Boals, an orthopedic surgeon, concerning his hip pain. Dr. Boals concluded that the cause of plaintiff's pain was arthritis in the hip joints and not an infection. Thereafter, Mrs. Michelson phoned Dr. Stanley on May 28th because plaintiff again was draining material from the site near his navel but Dr. Stanley did not instruct plaintiffs to return for treatment. Mrs. Michelson testified that plaintiff's condition was deteriorating and that she took plaintiff to see Dr. Stanley on June 8th. A cat scan was taken on June 10th. Plaintiff was in such pain that she called plaintiff's family physician, Dr. Ed Scott, who admitted plaintiff to the hospital on the evening of June 10th. The June 10th cat scan revealed a marked destruction of plaintiff's hips and hip joints. This was the first time that a cat scan had revealed bone destruction. Dr. Scott and, an orthopedic surgeon, Dr. Owen B. Tabor, who was Dr. Boals' partner, decided to consult with an infectious disease specialist, Dr. Karen Carroll, who would assist in determining the appropriate antibiotic treatment for plaintiff. Later in June, plaintiff underwent a girtlestone operation which involved hip joint replacement. Plaintiff had a stormy post-operative period and he remained in the hospital for 59 days after surgery. Mrs. Michelson testified that plaintiff is presently primarily confined to a wheelchair.

Plaintiffs filed a malpractice action against defendants. Dr. Lynch was not sued because plaintiffs' first attorney failed to name him as a defendant, and by the time plaintiffs' present attorney took over the case, the statute of limitations had run against Dr. Lynch. At trial, Dr. Carroll testified on behalf of plaintiffs as both a treating physician and a medical expert. Dr. Carroll testified that Dr. Stanley deviated from the applicable standard of professional practice by discharging plaintiff on April 18th because the infection in plaintiff's hips had not been cleared at that time and was continuing to develop. Her conclusion was based on plaintiff's fever, complaints of pain and the April 14th cat scan which showed reaccumulation of inflammatory fluid adjacent to the left hip and some joint effusion. She was of the opinion that further studies should have been performed to evaluate just how quickly the abscesses were reaccumulating. She testified that Dr. Brantley deviated from the standard of professional practice in concurring with the discharge. She also testified that the May 5th cat scan revealed that the infection had spread into plaintiff's hip joints, but not yet destroyed any bone. She said that if appropriate action had been taken at that time that plaintiff's hip bones could have been saved. Defendants testified on their own behalf. Additionally, three medical experts testified on behalf of defendants, Dr. Charles W. Munn, an internal medicine specialist, Dr. Sidney Birdsong, a surgeon, and Dr. Micheal Gelfand, an infectious disease specialist. There was also testimony by deposition from Dr. Tabor and Dr. Lynch. Defendants and Drs. Munn, Birdsong, and Gelfand testified that the medical treatment provided by defendants was at all times in conformity with the recognized standard of acceptable professional practice as was the discharge and follow-up care that he received. They also testified that it was appropriate for Drs. Stanley and Brantley to rely upon Dr. Lynch's opinion that there was no infection in plaintiff's hip joints. Dr. Lynch testified that determining whether there was an infection in plaintiff's hip joints was his responsibility. Dr. Tabor testified that Dr. Lynch's opinion that plaintiff's hip pain was caused by severe arthritis in his hip joints and conclusion of no infection was erroneous.

Plaintiffs argue that the trial judge failed to perform his duties as thirteenth juror in overruling plaintiff's motion for a new trial. Plaintiffs contend that the trial court disavowed his responsibility to determine the credibility of witnesses and the weight to be given such witnesses' testimony. The obligation of the trial judge to act as thirteenth juror in a civil trial is well established in Tennessee. *Cumberland Telephone & Telegraph Co. v. Smithwick*, 112 Tenn. 463, 79 S.W. 803 (1904) reads in part as follows:

The rule in civil cases is that, if the circuit judge is dissatisfied with the verdict of the jury, it is his duty to set it aside and grant a new trial, and that upon its being made to appear to this court, from statements made by the circuit judge in passing upon the motion for a new trial, that he was really not satisfied with the verdict, it becomes the duty of this court, when it has acquired jurisdiction of the cause, to do what the circuit judge should have done; that is, to grant a new trial on the ground of the dissatisfaction of that judicial officer with the verdict. (Citations omitted....).

.    .    .    .    .

The reasons given for the rule are, in substance, that the circuit judge hears the testimony, just as the jury does, sees the witnesses, and observes their demeanor upon the witness stand; that, by his training and experience in the weighing of testimony, and the application of legal rules thereto, he is especially qualified for the correction of any errors into which the jury by inexperience may have fallen, whereby they have failed, in their verdict, to reach the justice and right of the case, under the testimony and the charge of the court; that, in our system, this is one of the functions the circuit judge possesses and should exercise—as it were, that of a thirteenth juror. So it is said that he must be satisfied, as well as the jury; that it is his duty to weigh the evidence, and, if he is

dissatisfied with the verdict of the jury, he should set it aside. . . .

*Id.* 79 S.W. at 804–05.

■ If called upon to act as a thirteenth juror following the filing of a motion for a new trial, the trial judge simply approves a verdict without any comment, it is presumed by an appellate court that he has performed his function adequately. *Holden v. Rannick,* 682 S.W.2d 903, 905 (Tenn.1984); *Central Truckaway System v. Waltner,* 36 Tenn.App. 202, 217, 253 S.W.2d 985, 991 (1952).

■ In the event that the trial court does state his reasons, an appellate court is to examine them only for the purpose of determining whether the trial court properly reviewed the evidence, and was satisfied or dissatisfied with the verdict. *Smithwick, supra* at 805. However, if in discharging his duty as thirteenth juror, the trial judge makes comments which indicate that he has misconceived his duty or clearly has not followed it, this court must reverse and remand the case for a new trial. *See Nashville, C. and St. L.R. Co. v. Neely,* 102 Tenn. 700, 52 S.W. 167 (1899); *Mize v. Skeen,* 63 Tenn. App. 37, 468 S.W.2d 733 (1971); *James E. Strates Shows, Inc. v. Jakobik,* 554 S.W.2d 613 (Tenn.1977); *Holden v. Rannick,* 682 S.W.2d 903, 905 (Tenn.1984).

In *Holden, supra,* the trial court stated: "The Court as I say does not substitute its judgment for that of the Plaintiff [sic] I would just as readily have agreed with the verdict the other way." The Supreme Court affirmed the judgment of the Court of Appeals which reversed the trial court. The court said:

The comments of the trial judge, considered as a whole, indicate that he misconceived his duty as a thirteenth juror. Although the trial judge said that he agreed with the verdict for the defendant, he indicated that he would also have agreed with a verdict for the plaintiff. That position is inconsistent with his duty to weigh the evidence and pass on the issues. If a trial judge properly weighs the evidence and passes on the issues, he will not find that the evidence does not preponderate in favor of the plaintiff because the verdict is for the defendant, but would preponderate in favor of the plaintiff if the verdict had been for the plaintiff.

The trial judge stated that he expressly approved the verdict. It appears from the context of that statement, however, that he approved the verdict because he felt that the case was fairly presented and he was not shocked by the verdict, rather than because he reached the same verdict as the jury after independently weighing the evidence and passing upon the issues. Twice the trial judge stated that the court does not substitute its judgment for that of the jury. Those statements reveal a mistaken belief on his part that he was under no duty to pass upon the issues.

682 S.W.2d at 905–06.

■ We must now examine the comments of the trial judge in overruling plaintiff's motion for a new trial.

MR. SCHAEFFER: If Your Honor please, I would just like to remake the same point I have already made. Every one of these doctors came from the same medical staff at the same hospital, personally known to one another, work together all the time. You can read into that whatever can reasonably be read into it.

And they testified against the most obvious of the factual conditions.

THE COURT: Well, a medical malpractice case is primarily a matter between the authorities. All of the witnesses testifying in a medical malpractice case are generally experts, other than the Plaintiff and the plaintiff's lay witnesses. They are all experts.

The testimony of the witnesses, the credibility of a witness, is peculiarly within the province of the jury. They determine the weight, credit, and value to be given to the testimony. And it seems to me that they did that in this case and they found against the Plaintiff.

Now, of course, the Court charged them that numbers alone shouldn't influence that decision in adjudicating the value—weight, credit, and value of the testimony of a particular witness or the witnesses in the aggregate.

The Court is not the judge of the credibility of the witnesses. And the Court is of the opinion that there was sufficient evidence in the cause to justify the verdict of the jury.

The Court agrees with counsel for the plaintiff, it is a frustrating experience to try a medical malpractice case for the Plaintiff, always was and apparently always will be. It's a burden that really goes against the public opinion held of doctors. And the jury feels—has that feeling, I think, in a lot of cases.

But it's not for the Trial Court to decide the weight to be given to these experts. And the Court will deny the Motion for a New Trial.

We conclude that the trial judge's statements on the whole indicate that he misconceived his duty as thirteenth juror. The trial judge states that the credibility of witnesses is for the jury to determine, that the court is not the judge of the credibility of witnesses and that it was not the trial judge's duty to determine the weight of the testimony of the expert witnesses. The majority of the testimony at trial was expert testimony. As thirteenth juror, the trial judge's duty is to approve or disapprove of the jury's verdict based on his or her independent evaluation of the evidence. This evaluation includes weighing the evidence. The credibility of a witness's testimony affects the weight attributable to that testimony. The trial judge cannot make an independent evaluation of the evidence without assessing the credibility of witnesses. Therefore, when the trial judge is acting as thirteenth juror, assessing the credibility of witnesses is one of his functions.

While the role of a trial judge in a jury trial is obviously important to the successful conclusion of the trial, his role is more strate-gically significant in disposing of a motion for a new trial following an unsatisfactory jury verdict. He has certain responsibilities that he must carry out. The proper disposition of a motion for a new trial by the court is essential in order to afford the litigants appellate review. It has been repeatedly held in similar cases at law that the appellate court will not review the sufficiency of the evidence to sustain a verdict unless the verdict has received the approval of the trial judge. *Cumberland Telephone & Telegraph Co., supra* at 805; *Curran v. State,* 157 Tenn. 7, 12, 4 S.W.2d 957, 958 (1928).

Under the circumstances, we must remand this case to be retried.

Plaintiffs have also raised two issues related to jury misconduct. The entire argument in plaintiffs' brief in support of their positions consists of the affidavit of a juror Linda Crawford. Plaintiffs have failed to present an argument in their brief and have failed to cite any authority in support thereof. Accordingly, these issues are waived. *Wilhite v. Brownsville Concrete Co., Inc.,* 798 S.W.2d 772, 775 (Tenn.App.1990).

The judgment is reversed and the case is remanded for a new trial. Costs are assessed to the defendants.

TOMLIN, P.J. (W.S.), and FARMER, J., concur.