# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

---

ALI AGHA BATEBI,                    )
                                    )
    Plaintiff/Appellee         )        Shelby Law No. 41863 T.D.
                                    )
vs.                                 )
                                    )
PATRICK WAYNE CLARK  and            )        Appeal No.
THE KRYSTAL COMPANY,                )        02A01-9410-CV-00228
                                    )
    Defendants/Appellants.     )

FILED

August 9, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE

THE HONORABLE JAMES M. THARPE, JUDGE

For the Plaintiff/Appellee:          For the Defendants/Appellants:

Joseph Michael Cook                  B. J. Wade
Memphis, Tennessee                   Lori Keen
                                     Memphis, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, JUDGE

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

**OPINION**

In this case, the defendant, The Krystal Company (Krystal), appeals a jury verdict holding it liable for personal injuries received by the plaintiff, Ali Agha Batebi (Batebi), from a criminal assault by a third party while on Krystal's property. We affirm.

Krystal operates a restaurant in Memphis, Tennessee. At approximately midnight on August 3, 1991, Batebi went to the restaurant to purchase food. The Krystal restaurant was shorthanded that night with only two employees, one cooking the food and the other taking orders from customers. When Batebi came in, there were several customers in line ahead of him.

Defendant Patrick Wayne Clark (Clark) was present in the restaurant when Batebi entered. Clark had been drinking beer and was, by his own admission, intoxicated and loud. Clark had ordered no food and was pacing around the restaurant with his shirt open, harassing an African-American female customer ahead of Batebi in line. After the female customer left, Clark turned his attention to Batebi, laughed at him, and repeatedly asked him to say the word "brewer." Batebi first ignored Clark. When Clark persisted, Batebi asked him if he was "trying to start a fight or something." Batebi tried to get the attention of the Krystal employees but was unsuccessful. Clark testified that he asked Batebi to step outside the restaurant and that Batebi refused. Clark then left the restaurant. When Clark left, Batebi believed that the confrontation had ended. However, Clark returned to the restaurant moments later with a baseball bat. Batebi was unaware that Clark had come back inside. While Batebi was still facing the front counter of the restaurant, Clark struck him in the head with the baseball bat. The entire exchange between Clark and Batebi lasted approximately fifteen to twenty minutes.

Batebi sustained serious injuries from the blow from the baseball bat. He incurred $14,641.25 in medical expenses and $1,051.20 in lost wages. Batebi filed suit against Krystal and Clark, alleging negligence, gross negligence, and willful conduct on the part of both defendants. The suit sought both compensatory and punitive damages. At trial, the plaintiff introduced proof that Krystal regularly permitted intoxicated persons to frequent the restaurant, particularly during the "third shift" from 11:00 p.m. to 7:00 a.m. The plaintiff submitted testimony that employees working at Krystal during that shift were fearful and had requested Krystal's management to provide additional security. A Memphis police officer testified regarding prior calls to the police from the restaurant.

The jury found that Krystal had been negligent and that Krystal's negligence was a

proximate cause of Batebi's injuries.  It assessed 50% of the total fault against Clark and 50% against Krystal.  It found Batebi's total damages to be $166,000 and also awarded punitive damages against Clark in the amount of $15,700.  After post-trial motions, Krystal filed this appeal.

On appeal, Krystal contends that Batebi failed to establish that Krystal owed a duty to protect him under these circumstances.  Krystal also argues that Clark's assault against Batebi was an independent, superseding, and intentional act for which Krystal should not be held liable.  Further Krystal asserts that the trial court erred in permitting a police officer to testify regarding prior calls made to the Memphis Police Department from the Krystal restaurant in question.  Finally, Krystal maintains that the trial court failed to exercise its duty as thirteenth juror.

Under Tenn. R. App. P. 13(d), "[f]indings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict."  The standard of review for a question of law, however, is *de novo* with no presumption of correctness.  *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

The leading case in Tennessee regarding the liability of a business establishment for the criminal acts of third persons is *Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn. 1975).   In *Cornpropst*, the Court held:

> There is no duty upon the owners or operators of a shopping center, individually or collectively, or upon merchants and shopkeepers generally, whose mode of operation of their premises does not attract or provide a climate for crime, to guard against the criminal acts of a third party, unless they know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee; whereupon a duty of reasonable care to protect against such act arises.

*Id*. at 198.  In *Cornpropst*, it was undisputed that the business establishment in question had no knowledge that an identifiable person would attack the plaintiff customer in the defendant's parking lot.  The plaintiff sought to establish the liability of the defendant business establishment by proof of prior criminal activity on the premises or in the immediate area.  The Court found that this was not sufficient to impose liability.  *Id*. at 197.

Subsequent cases applying *Cornpropst* have usually involved situations in which the business establishment did not know or have reason to know that a particular individual was attacking or about to attack a customer.  See, for example, *McClung ex rel. McClung v. Delta Square Ltd. Partnership*, 1995 WL 30595 (Tenn. App. Jan. 26, 1995) (permission to appeal

2

granted Dec. 11, 1995); *Lewter v. O'Connor Management Inc.*, 886 S.W.2d 253 (Tenn. App. 1994); *Gray v. McDonald's Corp.*, 874 S.W.2d 44 (Tenn. App. 1993). These cases dealt with a sudden criminal attack in which the attacker could not have been identified in advance of the criminal act. In each case, allegations of past criminal activity in the area and on the premises were not sufficient to give rise to a duty for the defendant to protect the invitee from the criminal acts of a third party. In each, the court found that the defendant merchant did not know or have reason to know that criminal acts were occurring or about to occur which involved imminent harm to an invitee.

In this case, the proof at trial showed that Clark was very intoxicated and loud, and was pacing around the restaurant without ordering any food. He had verbally harassed an African-American female customer before turning his attention to Batebi. Clark repeatedly and loudly tried to bait Batebi into a confrontation. Batebi tried to get the attention of one of the two employees on duty, but they were too busy to respond. The exchange between Batebi and Clark which culminated in Clark striking Batebi in the head with a baseball bat lasted approximately fifteen to twenty minutes.

Under *Cornpropst*, the owners or operators of a business establishment may be held liable for the criminal acts of a third party if "they know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee . . . ." *Cornpropst*, 528 S.W.2d at 198. In this case, we find that there was sufficient evidence from which a jury could reasonably infer that Krystal should have known that Clark was about to engage in acts that posed "imminent probability of harm" to Batebi and that Krystal took no action to remove Clark from the premises or protect Batebi. Therefore, under *Cornpropst*, we hold that there was sufficient evidence to impose a duty upon Krystal to take action to protect Batebi and that there was a breach of that duty.

Krystal next argues that the criminal act of Clark was a superseding intervening act which broke the chain of proximate causation. Krystal notes that, when Clark left the restaurant to get the baseball bat, Batebi believed he had left the premises and would not come back. Batebi admits that he did not know Clark was going to hit him until it happened. In *McClenahan v. Cooley*, 806 S.W.2d 767 (Tenn. 1991), the Tennessee Supreme Court sets forth the test for proximate causation:

3

(1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence. The foreseeability requirement is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred.

*Id.* at 775 (citations omitted). Under *McClenahan*, in order to be the proximate cause of an injury, an act need not be "the sole cause, the last act, or the one nearest to the injury," so long as it is "a substantial factor in producing the end result." *Id.* The Court noted that " '[a]n intervening act will not exculpate the original wrongdoer unless it appears that the negligent intervening act could not have been reasonably anticipated.' " *Id.* (quoting *Evridge v. American Honda Motor Co.*, 685 S.W.2d 632, 635 (Tenn. 1985)). As with the issue of proximate causation, the question of superseding intervening cause is normally an issue for the jury because the trier of fact must determine if the act in question was foreseeable. *McClenahan*, 806 S.W.2d at 775-76.

In this case, as stated above, there is sufficient evidence from which a jury could reasonably infer that Krystal should have known that Clark was about to engage in acts that posed imminent probability of harm to Batebi. In other words, under circumstances in which Clark had engaged in drunken and abrasive behavior toward Batebi for approximately fifteen to twenty minutes, it was foreseeable that Clark would take action to harm Batebi. From this a jury could reasonably infer that Krystal's failure to take action to remove Clark from the premises or protect Batebi was a substantial factor in bringing about the harm to Batebi. Because there is material evidence to support the jury's determination that Krystal's negligence was the proximate cause of Batebi's injuries, we affirm on this issue as well.

Krystal next contends that the trial court erred in allowing Batebi to introduce the communication records of the Memphis Police Department through Lieutenant Pendleton of the Memphis Police Department, to show telephone calls to the police department from the restaurant in question. Krystal argues that Lieutenant Pendleton was not the records custodian of the police department at the time of trial and that she had been transferred out of the communications department for almost a year at the time of trial.

4

Rule 803(6) of the Tennessee Rules of Evidence provides that business records may be introduced into evidence by the testimony of the custodian or "other qualified witness." Under Tennessee case law, the term "qualified witness" is given a broad interpretation. *Alexander v. Inman*, 903 S.W.2d 686, 700 (Tenn. App. 1995). To be qualified, a witness must be personally familiar with the record-keeping procedures and must be able to explain them. It is not necessary for the witness to have personal knowledge of the facts in the record, to have been involved in the preparation of the record, or even to know who actually created the record. *Id*.

Questions on admissibility of evidence lie within the sound discretion of the trial court. We will reverse the trial court's decision to admit or exclude evidence only on a showing of abuse of discretion. *Arcata Graphics Co. v. Heidelberg Harris, Inc.*, 874 S.W.2d 15, 24-25 (Tenn. App. 1993); *Royal v. Days Inns of Am. Inc.*, 708 S.W.2d 411, 414 (Tenn. App. 1985). From our review of the record, there has been no showing of abuse of discretion in admitting this evidence through Lieutenant Pendleton.

Finally, Krystal argues that the trial court failed to properly perform its function as thirteenth juror in approving the jury verdict. Krystal unsuccessfully sought a new trial on the grounds that the jury verdict was contrary to the weight of the evidence. Krystal argues that statements made by the trial judge at the hearing on the motion for a new trial demonstrate that he failed to weigh the evidence in accordance with his role as thirteenth juror.

The law governing the trial court's role as thirteenth juror and appellate review thereof is well summarized in *Miller v. Doe*, 873 S.W.2d 346, 347 (Tenn. App. 1993). If the trial judge is dissatisfied with the jury verdict, it is his duty to set the verdict aside and grant a new trial. If the trial judge is asked to act as thirteenth juror and he approves the verdict without comment, the appellate court will presume that he adequately performed his function. If the trial court states reasons for denying the motion for a new trial, the appellate court will examine the stated reasons only to determine if the trial court properly reviewed the evidence and was satisfied or dissatisfied with the verdict. If the trial judge makes statements while considering the motion for a new trial that indicate that he was not satisfied with the jury's verdict but then does not grant a new trial, the appellate court should grant one based on the trial court's dissatisfaction with the verdict. If the trial judge makes comments indicating that he has misconceived his duty as thirteenth juror or that he clearly has not followed it, we must reverse and remand the case for a

5

new trial.

In *Miller*, at the hearing on the motion for new trial, the trial judge made lengthy comments that included remarks such as, "[W]hat makes the judge any smarter than the jury in this case," and "I'm not inclined to interfere with the verdict of the jury." *Miller*, 873 S.W.2d at 347-48. Although the trial judge also stated that he approved the verdict of the jury, this Court found that overall his remarks indicated that he was "being deferential to the jury," with nothing indicating that he had independently weighed the evidence. *Id*. at 349.

In *Michelsen v. Stanley*, 893 S.W.2d 941 (Tenn. App. 1993), a medical malpractice case, the plaintiff made a motion for a new trial and asked the trial court to consider the credibility of the expert witnesses. *Id* at 941, 943. The trial court stated that the credibility of witnesses "is peculiarly within the province of the jury" and that "[t]he Court is not the judge of the credibility of the witnesses." *Id*. at 944-45. Consequently, this Court determined that the trial judge's remarks demonstrated that he misconstrued his duty as thirteenth juror and remanded the case for a new trial. *Id*. at 945.

The trial court's duty as thirteenth juror was also discussed in *Ridings v. Norfolk Southern Railway Co.*, 894 S.W.2d 281 (Tenn. App. 1994). In *Ridings*, the motion for a new trial was based on numerous grounds, including whether the verdict was excessive. *Id*. at 289. The defendant argued that the following comments by the trial judge indicated that he did not perform his function as thirteenth juror:

> But without indulging in the interesting intellectual exercise of trying to figure out just exactly how the jury arrived at this verdict, the Court is constrained to conclude that in view of the evidence that was before the Court, and in view of the jury's important function in resolving credibility issues that the verdict is within that range of reasonableness based upon the evidence that the jury heard which compels the Court to approve the verdict and deprives the Court of any opportunity to substitute its judgment in any way for the amount of that verdict so; again, I feel like I have to discharge this important but very difficult, extremely difficult task of passing upon the amount of the verdict by concluding that under the evidence this jury heard it was a matter for the jury to say, not for the Court.

*Id*. at 290 & n.4. These remarks were followed by this statement:

> Certainly the verdict and the result is not such that this Court in the exercise of its function as a thirteenth juror could in good conscience set aside. I'm constrained to overrule the motion.

*Id*. at 290 (emphasis deleted). Considering the trial court's overall remarks, this Court noted that it was clear that the remarks relied upon by the appellant were addressed to issues separate from

6

the Court's role as thirteenth juror, issues such as the excessiveness of the verdict. *Id*. at 289.

Consequently, this Court stated:

> Comments of the trial court with respect to these other issues should not be interpreted by us as a failure to properly perform the role as thirteenth juror, since they were not offered by the trial court in the context of his role as thirteenth juror.

*Id*. The Court found that the trial judge then "changed gears" and that the separate thought which followed the remarks at issue demonstrated sufficiently that the trial court understood its role as thirteenth juror. *Id*. at 290.

In this cause, the defendant Krystal moved for directed verdict at the conclusion of Batebi's proof, and the trial court determined that there was sufficient evidence to present the case to the jury. After the jury verdict, Krystal filed a motion for new trial on numerous grounds, including the failure to direct a verdict, the alleged excessiveness of the verdict, and the assessment of 50% fault to Krystal. During the hearing on the motion for new trial, counsel for Krystal acknowledged that the motion for new trial was based on a number of grounds that were presented during the trial and to which the trial court had rendered a ruling adverse to Krystal; consequently, counsel for Krystal said that he would not argue every ground at the hearing. Krystal then argued at length that the jury had awarded an excessive amount of damages and had assessed 50% of the fault against Krystal primarily because the jurors knew that defendant Clark was a pauper and that Batebi would not be able to collect any significant monies from him. After Batebi's counsel reviewed the evidence against Krystal, the trial court ruled as follows:

> This case during the trial was a rather long case, but the Court considered this matter at that time about the liability of the -- of the Krystal, the owner of the premises. The Court concluded at that time that it was a jury question. The Court has been sent that same question again in this motion.
> Certainly the amount of the verdict, I don't see how fault can be taken, the argument has been made there's really not a legal question but an economical question. The fact that one of the defendants, the actor, is a pauper, maybe, that's the indication I got, there is no proof to the contrary, and he can't pay the judgment, that's not the matter to be considered by the jury to consider the fault in the case.
> I believe that this motion under those circumstances will have to be denied. Draw an order.

As in *Ridings*, the trial court in this case initially addresses issues other than the request that he reweigh the evidence as thirteenth juror. The first remarks allude to the motion for directed verdict, noting that the trial court found sufficient evidence to present the case to the jury and indicating that the motion for a new trial was based on the same grounds. The trial judge

7

then responds to Krystal's argument that the jury's verdict resulted from their realization that Clark had no money from which to collect a judgment. The trial court indicates agreement with the amount of the verdict, says that Krystal's argument is "not a legal question," and states that Clark's status as a pauper is "not the matter to be considered by the jury to consider the fault in the case."

Finally, as in *Ridings*, the trial judge "changes gears" and summarily rules on the entire motion. The trial court does not affirmatively state that he is reweighing the evidence, but simply rules without further comment.

Unlike *Miller v. Doe* and *Michelsen v. Stanley*, the trial court's remarks do not demonstrate that he misconstrued his duty as thirteenth juror or "clearly" did not follow it, or that he was deferring to the jury. Indeed, in *Ridings*, the trial judge's remarks on the alleged excessiveness of the verdict indicated considerably more deference to the jury than do the trial court's remarks in this case, yet this Court affirmed the denial of the motion for new trial.

Appellant's argument that the trial court failed to perform his function as thirteenth juror is without merit. The trial court's denial of the motion for a new trial is affirmed.

Affirmed. Costs on appeal are taxed to the Appellant, for which execution may issue if necessary.

_____
_____HOLLY KIRBY LILLARD, J.

**CONCUR:**

_____
**W. FRANK CRAWFORD, P.J., W.S.**

_____
**ALAN E. HIGHERS, J.**

8