IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 10, 2015


**STASHA B. TAYLOR, ET AL. v. MELVINIE E. SEYMORE, MD, ET AL.**


**Appeal from the Circuit Court for Shelby County**
**No. CT00482008     Donna M. Fields, Judge**

_____


**No. W2015-01272-COA-T10B-CV – Filed August 24, 2015**
_____


This accelerated interlocutory appeal arises from the trial court's denial of motions for recusal in two separate health care liability cases. We have consolidated the cases on appeal because they contain common facts and questions of law. Having reviewed the motions under the *de novo* standard of review required by Tennessee Supreme Court Rule 10B, we affirm the trial court's decision to deny both motions.


**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Circuit Court is Affirmed**.


ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON, J., and KENNY ARMSTRONG, J., joined.

Jill M. Steinberg and Quinn N. Carlson, Memphis, Tennessee, for the appellants, Dana Brazil and Methodist Healthcare-Memphis Hospitals.

W. Bryan Smith, Memphis, Tennessee, for the appellees, Stasha B. Taylor and Marcus Taylor.


**OPINION**


**I.   BACKGROUND AND PROCEDURAL HISTORY[1]**


In the first case, *Taylor v. Seymore*, plaintiffs Sasha and Marcus Taylor filed a complaint in the Shelby County Circuit Court in September 2008 alleging that the negligence

_____

[1] On appeal, we consider the case only on the submissions of the parties and the attachments thereto.

of defendants Melvinie E. Seymore, M.D., Dione M. Rouselle, M.D., Dana Brazil, R.N. ("Nurse Brazil"), and Methodist Healthcare—Memphis Hospitals d/b/a Methodist Germantown Hospital ("Methodist Germantown") caused the stillbirth of their child. In addition to compensatory damages, the Taylors sought punitive damages for, among other things, Methodist Germantown and Nurse Brazil's alleged attempt to fraudulently conceal evidence after the fact. After a protracted procedural history, the case was scheduled for a jury trial beginning on July 27, 2015.

In the second case, *Murphy v. Methodist Le Bonheur Healthcare*, plaintiffs Walter Murphy and Kimberly Skoff-Murphy (together with the Taylors, "Appellees") filed a complaint in the Shelby County Circuit Court in October 2009 alleging that negligent care by employees of defendant Methodist Le Bonheur Healthcare d/b/a Methodist University Hospital ("Methodist University," and together with Methodist Germantown, "Methodist Healthcare," and together with Methodist Germantown and Nurse Brazil, "Appellants") caused severe and irreversible brain damage to Ms. Skoff-Murphy leaving her totally disabled. Among other things, they alleged that Ms. Skoff-Murphy's injuries resulted from a delay in her treatment. The case was scheduled for a jury trial beginning on June 1, 2015.

The Honorable Donna M. Fields presided over the trial court proceedings in both *Taylor* and *Murphy*. On January 30, 2015, prior to trial in both cases, Judge Fields heard arguments pertaining to a motion to quash the deposition of Methodist Healthcare CEO Gary Shorb in a third, unrelated health care liability case, *Hatfield v. Allenbrooke Nursing and Rehabilitation Center, LLC*. During the hearing, Craig Conley, counsel for the proponent of the motion, argued that the purpose of Rule 30.02(6) of the Tennessee Rules of Civil Procedure is to prevent disturbance of executives by requiring participation in depositions, and the following exchange occurred:

> THE COURT: But do you agree, Mr. Conley, that discoverable and admissible are two different things?
>
> MR. CONLEY: I understand that, Your Honor, but I also understand that the parameters and restrictions that can be set on discovery, and I do understand the reason we have [Rule 30.02(6)] is to prevent this type of fishing expedition and to prevent this disturbance in executive's lives when they need to be doing their jobs. Fred Smith needs to be in charge of running Fed Ex. Excuse me, not Fred Smith, Alan Graf, Mike Glenn, whoever you want me to name from Fed Ex. It's the same thing.

That's why you have apex. That's why you have [Rule 30.02(6)]. I've represented Fed Ex. We did this all the time, and they took [Rule 30.02(6)]'s. I represent Methodist. We do this all the time.

Gary Shorb is not down in my office getting deposed day in and day out.

THE COURT: *Well, I'm sorry he's not. I can tell him how awfully I was treated in the emergency room recently, but that's a whole other subject.*

[PLAINTIFF'S COUNSEL]: Call me later. I'm just kidding.

THE COURT: Let's go off the record.

(Discussion Off The Record)

During the discussion that followed off the record, Judge Fields explained that she made the italicized statement in reference to a negative experience she had involving treatment in the emergency room at Methodist University.

On April 10, 2015, Appellants filed nearly identical motions for recusal in *Taylor* and *Murphy* arguing that the judge's comment raised reasonable questions about her objectivity towards Methodist Healthcare and its employees. The trial court heard arguments on the motions together at hearings on May 18 and 19, 2015. On June 25, 2015, the trial court entered an order denying the motion for recusal in *Murphy*. On July 1, 2015, the trial court entered an order denying the motion for recusal in *Taylor*.

On July 10, 2015, Appellants filed nearly identical petitions for recusal appeal in both cases as provided by Tennessee Supreme Court Rule 10B, § 2.02. On July 13, 2015, this Court directed Appellees to file answers as provided by Rule 10B, § 2.05 in both cases. On July 28, 2015, Appellees filed nearly identical answers in both cases. Our review of the parties' submissions revealed that the two appeals involve common facts and questions of law. Although the parties did not move to consolidate the appeals of the separate judgments, on August 10, 2015, this Court entered an order *sua sponte* consolidating the cases for appellate purposes pursuant to Tennessee Rule of Appellate Procedure 16(b).

## II. ISSUE ON APPEAL

When reviewing a Tennessee Supreme Court Rule 10B appeal, this Court may only review the trial court's order that denies a motion to recuse. *Duke v. Duke*, 398 S.W.3d 665,

668 (Tenn. Ct. App. 2012). Accordingly, the sole issue in this consolidated appeal is whether the trial court erred in denying the motions for recusal in *Taylor* and *Murphy*.

## III. STANDARD OF REVIEW

We review the trial court's ruling on a motion for recusal under a *de novo* standard of review. Tenn. Sup. Ct. R. 10B, § 2.01.

## IV. DISCUSSION

Appellants contend that the trial judge erred in denying their motions to recuse because, in light of her comment during the January 30, 2015 *Hatfield* hearing, a reasonable person might question her impartiality towards Methodist Healthcare and its employees. This Court recently discussed the importance of impartiality of a court in *Williams ex rel. Rezba v. HealthSouth Rehab. Hosp. N.*, No. W2015–00639–COA–T10B–CV, 2015 WL 2258172 (Tenn. Ct. App. May 8, 2015):

> Aristotle said: "The law is reason, free from passion." In the spirit of this famous quotation, Tennessee Supreme Court Rule 10, Code of Judicial Conduct Rule 2.11 states that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned [.]" "'The right to a fair trial before an impartial tribunal is a fundamental constitutional right[,]'" *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)), and it remains "important to preserve the public's confidence in a neutral and impartial judiciary." *Id.* As we have emphasized in the past, "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial."); *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn.Ct.App.1998) (citations omitted). Even when a judge sincerely believes that he can preside over a matter in a fair and impartial manner, recusal is nonetheless required where a reasonable person "'in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564–65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). "It is an objective test designed to avoid actual bias and the appearance of bias, 'since the appearance of bias is as injurious to the integrity of the judicial system as actual bias.'" *Shelby County Gov't v. City of Memphis*, No. W2014–02197–COA–T10B–CV, 2015 WL 127895, at *4 (Tenn. Ct. App. Jan. 8, 2015) (citation omitted). In examining requests for recusals due to bias, it is

4

important to keep in mind the fundamental protections that the rules on recusal are intended to provide. The law on judicial bias is intended "to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor." *Bean*, 280 S.W.3d at 803 (citation omitted).

*Id*. at *6 (footnote omitted).

The terms "bias" and "prejudice" generally refer to a state of mind or attitude that works to predispose a judge for or against a party; however, "not every bias, partiality, or prejudice merits recusal." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). "To disqualify, prejudice must be of a personal character, directed at the litigant, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case." *Id*. (citations omitted). "Impersonal prejudice resulting from the judge's background experience does not warrant disqualification." *Id*. (citation omitted).

Parties often allege that comments made by a judge demonstrate bias or prejudice. *See, e.g.*, *Cullum v. Baptist Hosp. Sys., Inc.*, No. M2014–01905–COA–T10B–CV, 2014 WL 5511472, at *3 (Tenn. Ct. App. Oct. 31, 2014) ("Defendants have identified six statements by the trial judge in support of their claim of bias."). Remarks that suggest the judge has formed an opinion on the case prior to hearing the evidence or has taken a position favorable or unfavorable to a party may indicate bias. *Alley*, 882 S.W.2d at 822 (citations omitted). Remarks that indicate a judge's personal moral convictions or "reflect prevailing societal attitudes," however, are not sufficient alone to require disqualification. *Id*. (citations omitted). Any comments made by the judge must be construed in the context of all the facts and circumstances to determine whether a reasonable person in the judge's position, knowing all of the facts known to the judge, would construe those remarks as indicating partiality on the merits of the case. *See id*. (citations omitted).

Here, Appellants contend that recusal is required in *Taylor* and *Murphy* in light of the trial judge's role as thirteenth juror. As the thirteenth juror, a trial judge must approve or disapprove of the jury's verdict based on his or her evaluation of the evidence. *Michelsen v. Stanley*, 893 S.W.2d 941, 945 (Tenn. Ct. App. 1993). The trial judge must independently weigh the evidence, a task that necessarily involves the assessment of witness credibility. *Id*. Specifically, in *Taylor*, Appellants that argue although the judge's comment referenced treatment at a different Methodist Healthcare hospital (Methodist University) than the one at issue in that case (Methodist Germantown), the comment may reflect bias against Methodist Healthcare CEO Gary Shorb, a potential witness in the case. Additionally, they contend a

5

reasonable person might question the judge's ability to weigh testimony impartially on the timeliness and sufficiency of care at all Methodist Healthcare facilities. Similarly, in *Murphy*, Appellants contend that a reasonable person might question the judge's ability to weigh testimony impartially related to the timeliness and sufficiency of care at Methodist University because her comment was made in reference to a personal experience at that same hospital. Thus, in both cases, Appellants contend that the judge's comment could give rise to a reasonable perception that her credibility assessment with respect to the timeliness and sufficiency of care in Methodist Healthcare facilities may be impacted by her personal knowledge and experience as a patient.

Appellants rely on this Court's opinion in *Hall v. Randolph*, No. W2013–02571-COA-T10B-CV, 2014 WL 127313 (Tenn. Ct. App. Jan. 14, 2014), in support of their argument. In that case, the plaintiff filed a health care liability lawsuit against the defendant doctor for injuries allegedly caused by the defendant's negligence during the delivery of the plaintiff's child. *Id.* at *1. Prior to trial, the trial judge disclosed that, eight years earlier, while the case was pending before a different judge, she had undergone a surgery performed by Joseph DeWane, M.D. ("Dr. DeWane"), an expert witness for the defendant regarding the appropriate standard of care. *Id.* In light of the judge's disclosure, the defendant filed a motion for recusal in which he asserted that the judge's former physician-patient relationship with Dr. DeWane could reasonably impact her evaluation of Dr. DeWane's credibility and, therefore, impact her role as thirteenth juror. *Id.* The trial judge denied the motion. *Id.* In the order denying the motion, the judge characterized her relationship with Dr. DeWane as "long past." *Id.* at *3. She further noted that the surgical procedure was performed eight years earlier, before the case was transferred to her court; the surgery was "uneventful" and "uncomplicated;" she had not had any contact with Dr. DeWane since he released her from post-surgery care; and she likely would not recognize Dr. DeWane "were he to walk through the door." *Id.* On appeal, this Court concluded that there was nothing to suggest that the trial judge's characterization of her relationship with Dr. DeWane in the order was inaccurate. *Id.* Nevertheless, this Court reversed the trial court's denial of the motion for recusal, stating as follows:

> We observe that actions alleging medical malpractice often present the jury with a "battle of the experts" in which the jurors must decide which expert to believe. In this case, Dr. DeWane is Dr. Randolph's expert witness with respect to the standard of care, a pivotal issue in this matter, and it is undisputed that the trial judge underwent surgery performed by Dr. DeWane during the pendency of this litigation. Although the trial judge was not presiding over the matter in 2005 or 2006, when she was a patient of Dr. DeWane, it is objectively reasonable to believe that the trial judge's credibility assessment with respect to the standard of care may be impacted-positively or

negatively, as the case may be-by her personal knowledge and experience as a former patient of the expert witness. At the very least, an appearance of partiality arises where the trial judge was a patient of a key expert witness in a medical malpractice action during the pendency of the action in the court, albeit in a different division.

*Id*. (internal citations omitted).

Initially, we note that in *Hall*, this Court concluded that the circumstances warranted recusal based on the trial judge's treatment alone. We determined that the appearance of bias arose because the trial judge was treated during the pendency of the case by the specific doctor that was scheduled to testify as an expert witness on the appropriate standard of care. *Id*. Thus, the judge's personal interactions with that specific individual provided a reasonable basis for questioning her impartiality in assessing that specific individual's testimony. In contrast, there is no indication here that the trial judge received treatment from or had contact with any specific individual involved in either case before us during its pendency. Standing alone, the fact that the trial judge received treatment at the same hospital, or a different hospital within the same network of healthcare facilities, during the pendency of the cases before us is not sufficient to create a reasonable appearance of partiality.

Appellants argue that the trial judge's negative characterization of the treatment she received at Methodist University creates an appearance of bias towards Methodist Healthcare and its employees. The judge made the comment at issue on the record during a discussion pertaining to the deposition of Methodist Healthcare CEO Gary Shorb in an unrelated case. In arguing against the deposition, one of the attorneys indicated that Mr. Shorb was not in his office being deposed each day, to which the trial judge responded as follows: "Well, I'm sorry he's not. I can tell him how awfully I was treated in the emergency room recently, but that's a whole other subject." As she subsequently explained in a discussion off the record, the judge's statement was made in reference to her experience in the emergency department at Methodist University. If required to consider the trial judge's statement standing alone, a reasonable person might infer bias against Methodist Healthcare and its employees; however, "[a]ny comments made by the trial court must be construed in the context of all the facts and circumstances to determine whether a reasonable person would construe those remarks as indicating partiality on the merits of the case." *Alley*, 882 S.W.2d at 822 (citations omitted). Construed in its appropriate context, the judge's comment is not sufficient to require recusal.

During the May 18, 2015 hearing on the motions for recusal, the trial judge candidly discussed the particular incident her comment was made in reference to, as well as her lengthy personal history of treatment in Methodist Healthcare facilities. The judge explained

7

that the comment was made in reference to a single incident in which she grew frustrated waiting for the results of a CT scan in an emergency room at Methodist University while doctors tended to patients in need of more urgent care. She explained that although she understood why she had to wait in such circumstances and stated that she expected to do so, the experience was nonetheless unpleasant. She emphasized that her reference to being treated "awfully" during the visit was meant to be a lighthearted reference to the unpleasantness commonly associated with an emergency room visit and was not indicative of bias or prejudice against Methodist University or Methodist Healthcare as a whole. She further explained that she had been treated at Methodist Healthcare facilities by choice on numerous occasions for more than four decades and, at one point, even feuded with her insurance carrier in an attempt to have a procedure done by a Methodist Healthcare doctor rather than a doctor outside its network. The judge went so far in recounting her positive personal experiences with Methodist Healthcare during the hearing that at one point, she asked one of the Appellees' attorneys whether he would be filing a motion to recuse.

Appellants contend that, to the extent that the judge's prior relationship with Methodist Healthcare should be considered at all, her characterization of the relationship as positive should not be considered. We agree that allowing a judge to cure a statement indicating bias or prejudice against a person or entity by subsequently heaping praise on it is problematic. In doing so, it is certainly foreseeable that judges would reverse course so far as to expose themselves to recusal motions from both sides of a conflict, a possibility that the judge acknowledged in this case. Additionally, in a case such as this, involving allegations of bias against a healthcare facility, we think it unnecessary and, in fact, undesirable, for a judge to feel compelled to reveal the details of his or her private medical history to demonstrate impartiality. Nonetheless, the fact that a judge has a lengthy relationship with the entity about which he or she makes a statement is relevant to the context in which the statement was made. As such, we see no reason to exclude the judge's lengthy relationship with Methodist Healthcare as her hospital of choice from our consideration of the context in which the statement at issue was made.

Next, Appellants contend that this Court should not consider the manner in which the comment itself was made. Though Appellants do not dispute the judge's claim that the comment at issue was made "in a jocular way," they argue that the judge's "subjective" characterization of the statement should not be considered in an objective analysis. They contend because no audio recording or other evidence of the statement is in the record, our analysis is limited to consideration of the printed transcript of the hearing in which the statement was made, which does not reflect laughter or otherwise indicate levity. Excluding the judge's characterization of the exchange, however, would prevent this Court from construing the statement in the context of all the facts and circumstances as we are bound to do. *See Alley*, 882 S.W.2d at 822. While this Court may not accept the trial judge's

subjective belief that he or she can act impartially as determinative on a motion for recusal, we may consider the trial judge's characterization of relevant facts as they relate to the specific circumstances at issue. For example, in *Hall*, this Court accepted the trial judge's characterization of her relationship with Dr. DeWane, noting the absence of evidence to suggest that it was not accurate. *Hall*, 2014 WL 127313, at *3. Likewise, there is no evidence in this case to suggest that the trial judge's characterization of the comment as having been made "in a jocular way" was not accurate. Along with their motions for recusal in both of these cases, Appellants submitted the affidavit of the attorney to whom the judge was speaking when she made the comment at issue. The affidavit does not contain any statement indicating that the judge's comment was not made in a joking manner. Thus, Appellants had the opportunity to present evidence related to the manner in which the comment was made and did not do so. Although, as Appellants assert, there is no way of knowing the exact manner in which the judge's statement was made, there is nothing to suggest that her characterization of the statement as being a "jocular" response is not accurate.

In light of the foregoing, we cannot conclude that a reasonable person, knowing all of the facts known to the judge, would have any reasonable basis for questioning the judge's ability to act impartially as thirteenth juror in either of the cases before us. It appears the trial judge's comment was little more than a lighthearted reference to the unpleasantness that often accompanies emergency room visits. Though perhaps ill-advised, if only because of the time and expense it has taken to resolve the motions for recusal, the comment does not indicate partiality on the merits of the case when construed in the context of all the facts and circumstances.

## V. Conclusion

We affirm the trial court's decision to deny the motion for recusal in *Taylor v. Seymore* and remand the case for further proceedings. We also affirm the trial court's decision to deny the motion for recusal in *Murphy v. Methodist Le Bonheur Healthcare* and remand the case for further proceedings. Costs of appeal in each case shall be paid by Appellants and their sureties, for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE

9