Darlene Renee MILLER and Michael
R. Miller, Plaintiffs/Appellants,

v.

John DOE, Defendant/Appellee

(Auto Owners Insurance Company)
(Unnamed Defendant/Appellee).

Court of Appeals of Tennessee,
Western Section,
at Nashville.

Sept. 29, 1993.

Application for Permission to Appeal
Denied by Supreme Court
Feb. 14, 1994.

Larry R. Williams and Rene Riggs Gilliam, Williams, Smith & Dozier, P.C., and James L. Curtis, Nashville, for plaintiffs.

James D. Kay, Jr., Nashville, for defendant Auto Owners Ins. Co.

TOMLIN, Presiding Judge (W.S.).

This is an uninsured motorist case. Plaintiffs were injured when they were allegedly forced off the road by an unknown driver who did not stop for the accident. There was a jury verdict in favor of the plaintiffs' uninsured motorist carrier, Auto Owners Insurance Co. ("Auto Owners"), who answered the complaint on behalf of the unknown driver. While plaintiffs have raised several issues on appeal, the pivotal issue is whether the trial judge aptly performed his function as a thirteenth juror in approving the jury verdict. We are of the opinion that he did not, leaving us no option but to reverse and remand this case for a new trial.

Inasmuch as this case is being remanded on a question of law, we will deal briefly with the facts. One morning Darlene Renee Miller was driving her son, Michael R. Miller to school on Ellington Parkway in Nashville. She contends that as she entered a ramp leading to Briley Parkway, a blue car in the traffic lane to her right began to encroach upon her lane of travel. She testified that to

evade the car she drove onto the left hand shoulder of the road which was covered with gravel. Her car hit a guardrail and travelled back across the road into a stone embankment on the opposite side of the ramp. She testified she was unable to get the license number of the vehicle, which did not stop. Both she and her minor son suffered personal injuries in the accident.

Auto–Owners presented proof that there was no contact between the "phantom" automobile and the Miller vehicle as required by T.C.A. § 56–7–1201. The jury apparently believed the testimony of Auto–Owners witnesses, as it returned a defendant's verdict. Plaintiffs filed a motion for a new trial, alleging, among other things, that the jury verdict was contrary to the weight of evidence. The trial court denied plaintiffs' motion. It is plaintiffs' contention that based on the statements made at the hearing on the motion for new trial by the trial judge, it is abundantly clear that he did not weigh the evidence in accordance with his role as thirteenth juror.

The obligation of a trial judge to act as a thirteenth juror in a civil trial in this state is well established. *Cumberland Telephone & Telegraph Co. v. Smithwick*, 112 Tenn. 463, 79 S.W. 803 (1904), reads in part as follows:

The rule in civil cases is that, if the circuit judge is dissatisfied with the verdict of the jury, it is his duty to set it aside and grant a new trial, and that upon its being made to appear to this court, from statements made by the circuit judge in passing upon the motion for a new trial, that he was really not satisfied with the verdict, it becomes the duty of this court, when it has acquired jurisdiction of the cause, to do what the circuit judge should have done; that is, to grant a new trial on the ground of the dissatisfaction of that judicial officer with the verdict. (Citations omitted)....

.    .    .    .    .

The reasons given for the rule are, in substance, that the circuit judge hears the testimony, just as the jury does, sees the witnesses, and observes their demeanor upon the witness stand; that, by his training and experience in the weighing of testimony, and the application of legal rules thereto, he is especially qualified for the correction of any errors into which the jury by inexperience may have fallen, whereby they have failed, in their verdict, to reach the justice and right of the case, under the testimony and the charge of the court; that, in our system, this is one of the functions the circuit judge possesses and should exercise—as it were, that of a thirteenth juror. So it is said that he must be satisfied, as well as the jury; that it is his duty to weigh the evidence, and, if he is dissatisfied with the verdict of the jury, he should set it aside....

*Id.* 79 S.W. at 804–05.

■ If called upon to act as a thirteenth juror following the filing of a motion for a new trial, the trial judge simply approves a verdict without any comment, it is presumed by an appellate court that he has performed his function adequately. *Holden v. Rannick*, 682 S.W.2d 903, 905 (Tenn.1984); *Central Truckaway System v. Waltner*, 36 Tenn.App. 202, 253 S.W.2d 985, 991 (1952).

■ In the event that the trial court does state his reasons, an appellate court is to examine them only for the purpose of determining whether the trial court properly reviewed the evidence, and was satisfied or dissatisfied with the verdict. *Smithwick, supra* 79 S.W. at 805. However, if in discharging his duty as thirteenth juror, the trial judge makes comments which indicate that he has misconceived his duty or clearly has not followed it, this court must reverse and remand the case for a new trial. *See Nashville, C. & St. L.R. Co. v. Neely*, 102 Tenn. 700, 52 S.W. 167 (1899); *Holden, supra* at 905.

It now becomes our responsibility to examine the comments made by the trial judge when he overruled plaintiffs' motion for a new trial in light of the rule and the manner in which it is applied. To perceive the full impact of what the trial court did and did not say, we set forth in full the exchange between the court and counsel for plaintiffs:

*THE COURT: Well, what makes the judge any smarter than the jury in this case; I mean, you had a sympathetic client. I have to say that. No person, judge included, would feel other than em-*

pathy toward the situation in which she's found herself, but this issue of contact is—

MR. WILLIAMS: I don't think the issue is whether the Court is smarter or not, but the question is whether or not the Court believes that the evidence, that the scales tip in favor of the Defendant's verdict on that issue of contact when you consider the method by which the contact would have to have occurred to this delineator.

The Court recalled that I asked Mr. Hutchison to demonstrate to the jury down here in front of the jury box how that contact could have occurred and made those marks, and respectfully, Your Honor, he couldn't do it. In fact, he can't explain that theory, and I noticed in his response to my motion for new trial that Mr. Kay can't explain that theory. Mr. Kay never even argued that theory to the jury. The whole argument of Mr. Kay in defense of this case is that the Plaintiff changed her story. I certainly can appreciate that tactic, but the fact of the matter is that the uncontroverted proof shows there was contact, and it's only a question of which two mediums made the contact, the car or the delineator....

THE COURT: You made all those arguments to the jury.

MR. WILLIAMS: I made them, Your Honor, to the jury, but now I'm making them to Your Honor and asking Your Honor to weigh that proof and make a decision as to whether or not the evidence preponderates in favor of that verdict. And when you consider the physical facts, Your Honor, and the physical facts as I understand the law prevail over positive testimony to the contrary. Even the testimony, the fact that the Plaintiff originally thought there was not any contact. Physical facts prevail over all that. And the physical facts of this case simply show it can't happen the way the Hutchison theory says that it happened....

THE COURT: Here again, I mean, for one time you had all the sympathy on your side. In fact, he produced two witnesses that make working with insurance into a religion. Those two guys were about as squirrely as they come.

MR. WILLIAMS: I agree with that, Your Honor.

THE COURT: And here you have a Plaintiff that I would guess the jury probably wanted to decide the case for.

MR. WILLIAMS: Well, they must not have, Your Honor.

THE COURT: So I can't see the jury running off doing this unless they really felt that the facts were mandated.

MR. WILLIAMS: I would agree with that, Your Honor.

THE COURT: And you did a good job of presenting the case. I hate to use a compliment against you on this motion, but you did a excellent job in presenting the case.

MR. WILLIAMS: I appreciate that, Your Honor, but what this motion addresses is, does Your Honor believe that the evidence preponderates in favor of that verdict considering the physical facts? Because the jury, they have done their thing. Now I'm asking Your Honor, with all due respect, to make that decision of whether or not the physical facts in this case show that the judgment or the evidence in the case preponderates in favor of that defense theory? And it's the only theory that we've got before the Court....

THE COURT: I remember all this. You did such a good job, I can still remember your argument from the first time.

.    .    .    .    .

THE COURT: All right. Well, the jury in this case had the benefit of two prepared and good lawyers, which isn't always the case. The case was well presented. I think the issues were clear, although obviously contested.

Mr. Williams, I'm not inclined to interfere with the verdict of the jury, and I approve the verdict of the jury. I understand your arguments, but the jury heard all these things and the jury decided the case against you. Your motion for a new trial is respectfully overruled.

We now undertake to compare the trial judge's statements in the case at bar with the statements made by trial judges in other

reported decisions in which it was held that the trial court misconceived his duty as thirteenth juror and deferred to the jury. The first of these cases is *Nashville, C. & St. L.R. Co. v. Neely,* 102 Tenn. 700, 52 S.W. 167 (1899), which was a suit for personal injuries sustained by the plaintiff as he disembarked from one of the defendant's passenger trains. The jury returned a verdict in favor of the plaintiff for $7500, which plaintiff remitted by $5,500, leaving a verdict of $2000. Defendant made a motion for new trial, which was denied, and appealed. In overruling the motion for a new trial, the court stated that the "facts in the case were considerably mixed, but that it was a rule of his to rarely invade the province of the jury in setting aside their verdicts, if there were any substantial facts to support the same." *Id.,* 52 S.W. at 168. The supreme court reversed, stating that the statements of the trial court showed his misconception of the functions of the court and jury and gave unwarranted weight to the verdict.

In *McLaughlin v. Broyles,* 36 Tenn.App. 391, 255 S.W.2d 1020 (1952), the plaintiffs brought suit for injuries sustained in an automobile accident. The jury returned a verdict in favor of the defendant.

In overruling plaintiffs' motion for a new trial, the court stated as follows:

In these cases where the evidence is in sharp conflict the Court does not feel that he has a right to interfere with the verdict of the jury, and overrules the motions. *Id.* 255 S.W.2d at 1022.

■ From the beginning, it appears that the trial judge was being deferential to the jury and pointing out to counsel that earlier the jury had heard the same arguments. The court observed that the jury wanted to be sympathetic to the plaintiffs and that counsel for plaintiffs "did a good job" in trying the case. The best the court could say was "I'm not inclined to interfere with the verdict of the jury, and I approve the verdict of the jury." In sum, the trial court was deferential to the jury and at the same time attempting to make counsel for plaintiffs "feel good," notwithstanding the fact that he had lost. There is nothing in this record to indicate that the trial court approved the verdict for the reason that he had independently weighed the evidence, had passed on the issues presented to the jury, and reached the same verdict as the jury did.

While the role of a trial judge in a jury trial is obviously important to the successful conclusion of the trial, his role is more strategically significant in disposing of a motion for new trial following an unsatisfactory jury verdict. He has certain responsibilities that he must carry out. The proper disposition of a motion for a new trial by the court is essential in order to afford the litigants appellate review. It has been repeatedly held in similar cases at law that the appellate court will not review the sufficiency of the evidence to sustain a verdict unless the verdict has received the approval of the trial judge. *Cumberland Telephone & Telegraph Co., supra* 79 S.W. at 805; *Curran v. State,* 157 Tenn. 7, 4 S.W.2d 957, 958 (1928).

Because of these seemingly harmless but unfortunate remarks, this case must be retried. To avoid the recurrence of a retrial under such circumstances, we strongly suggest that when a trial judge overrules a motion for new trial, that he simply state that he has reviewed the evidence relevant to the issues and approves the verdict. Anything more unnecessarily runs the risk of an unwanted new trial.

For the reasons stated above the judgment is reversed and the cause is remanded to the Circuit Court of Davidson County for a new trial. Costs in this cause on appeal are taxed to defendant, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.

HIGHERS, Judge, concurring.

I agree with the result in this case, but I would add the following:

The trial judge stated at one point, "I approve the verdict of the jury." Ordinarily, that would be sufficient to discharge his duty as thirteenth juror. Unfortunately, in this case, that remark cannot be disassociated from the surrounding comments by the trial court, all of which indicate that notwithstanding the polite but persistent urgings of coun-

sel, he simply deferred to the verdict of the jury without independently weighing the evidence and fulfilling his role in passing on the issues presented to the jury.

Under the circumstances, the verdict cannot stand.