# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### August 7, 2003 Session

## ELAINE H. DEATHERIDGE, ET UX. v. RICHARD T. BARKSDALE

**A Direct Appeal from the Circuit Court for Davidson County**
**No. 01C-1475     The Honorable Marietta M. Shipley, Judge**

---

**No. M2003-00032-COA-R3-CV - Filed December 23, 2003**

---

Plaintiffs brought action against driver for damages arising from a rear-end automobile collision. Defendant raised affirmative defense of sudden emergency caused by a "phantom" non-party defendant's placing duct work in the roadway. The jury found that Defendant was not at fault. Plaintiffs appeal. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Terrance E. McNabb; James R. Omer & Associates, Nashville, For Appellants, Elaine H. Deatheridge and Louise D. Deatheridge

William B. Jakes, III, Nashville, For Appellee, Richard T. Barksdale

### OPINION

The accident at issue in this case occurred on May 21, 1998, at the intersection of Lombardy Drive and Hillsboro Pike in Nashville, Tennessee. The vehicle driven by Elaine Deathridge was stopped at a red light when it was struck from the rear by a vehicle owned and driven by Richard T. Barksdale ("Barksdale," "Defendant," or "Appellee").

On May 16, 2001[1], Elaine Deathridge and her husband, Louis (together with Elaine Deathridge, the "Deathridges," "Plaintiffs," or "Appellants") filed a Complaint against Barksdale. The Complaint reads, in relevant part, as follows:

---

[1] The suit was originally filed within one year of the accident date and voluntarily dismissed. The instant suit was timely filed under the saving statute.

5. Defendant was then and there negligent in that he (a) failed to maintain the vehicle he was operating under due and reasonable control; (b) operated his vehicle at a speed which was excessive under the conditions then and there existing; (c) failed to maintain a due and proper lookout ahead in the direction in which he was driving, and in particular for the car in which Plaintiff was an occupant; (d) failed to bring his vehicle under control and to slow the same when there was sufficient time and distance for him to do so before striking the rear of Plaintiff's automobile; (e) failed to see that which was there to be seen and take proper action with respect thereto; (f) failure to take necessary evasive action when it was evident that a collision was about to occur.

6. Defendant was further then and there guilty of negligence per se in that he violated one or more of the statutes of the State of Tennessee, including, but not limited to, the following statute:

> T.C.A. 55-8-124: Following too closely. (a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

Mrs. Deathridge seeks damages for personal injury. Mr. Deathridge seeks damages for loss of consortium and services of his wife. Barksdale filed his Answer on August 14, 2001. In his Answer, Barksdale admitted "that his vehicle struck the vehicle being operated by plaintiff but [denies] that there was any violent crash as alleged," and raised, as an affirmative defense, the placing of "duct work material" in the roadway by a phantom non-party defendant.

The case was tried to a jury on November 4, 5, and 6, 2002. The jury found that Barksdale was not at fault. An Order of Judgment was entered on the jury verdict on November 18, 2002. The Deathridges filed a Motion for New Trial on November 21, 2002.[2] Barksdale filed a Response to the Motion for New Trial. The Motion for New Trial was heard on December 6, 2002 and was denied by Order entered on December 17, 2002.

The Deathridges appeal and raise five issues for review as stated in their brief:

1. Whether the Trial Judge properly performed her function as a Thirteenth juror in denying Plaintiffs' motion for a new trial.

---

[2] Pursuant to Tenn. R. App. P. 3(e), Plaintiffs' Motion for New Trial specifically mentioned each of the issues presented on appeal.

2. Whether the jury verdict is contrary to the weight of the evidence.

3. Whether the Trial Judge erred in instructing the jury on sudden emergency.

4. Whether the Trial Judge erred in instructing the jury that a "phantom person's" violation of T.C.A. § 55-8-170 was negligence per se.

5. The Trial Judge erred in failing to direct a verdict for Plaintiffs.

**Whether the Trial Judge properly performed her function as a Thirteenth juror in denying Plaintiffs' motion for a new trial.**

The Deathridges contend that the statements by the trial judge, in denying their Motion for New Trial, denote an implicit acknowledgment that the court "deferred to the judgment of the jury without making an independent decision on the issues, and thereby failed to perform her duty as a thirteenth juror." We quote from the record:

> MR. MCNABB: ...[W]e don't think that the verdict is supported by the evidence. And that's–you're the thirteenth juror, if you agree, you can give us a new trial.
>
> *                              *                             *
>
> THE COURT: ...legal cause of an injury is a cause to the natural continuous sequence produces the injury without which the injury would not have occurred. Well, that assumes, I mean it's clear that Mr. Barksdale was probably at fault for the fact that her car was hit from the rear.
>
> But I'm not exactly sure that we provide in all of our jury instructions whether he could also be at fault for the injury that she suffered and, you know, I don't know, maybe we need to ask ten questions so we can go through each one of these things.
>
> It's very–there was a very, well, tortured opinion that Judge Koch wrote on this, you know, whether you should have a whole different set of questions when the issue is the injury, when the issue is the extent of the injury, not necessarily whether the accident was caused by the Plaintiff.

And at that point, you know, it made me wonder whether we should extend–he has a whole list of questions that could perhaps be used in place of what are the suggested jury instructions, when we try to make it real simple.

I mean we simplify it because the process is hard enough to do the comparison when they never heard of it before. And so rather than, you know, I don't know, maybe we need to do is he at fault for the accident happening, yes or no.

Is the non-party at fault. And then, what do you do with that. Okay. So then do you go to the next set of questions, is the defendant at fault for producing the actual injury to the plaintiff, and the same would be is he at fault for–is the non-party at fault for producing the injury.

Now, maybe that would answer the question that was posed in this case because it does create a real dilemma. I mean she wasn't at fault. I mean we're not comparing her and the driver. And I mean there was, you don't even assert that.

MR. JAKES: No, it wasn't even raised.

THE COURT: Right. So, you know, if you just take a literal reading of what it means to be at fault, then it was negligence, the negligence was the legal cause of the injury and the damage.

Now, we don't distinguish between the accident and the injury. And we don't distinguish between damage to anything the Plaintiff was in and her problem now.

Since we have so few trials, you know, now, most of them are about something like this. You know, maybe we really need to revise our jury verdict form to provide for this possibility.

Now, the Plaintiffs, on the other hand, would probably dispute that because then that highlights what the actual dispute is between the parties that the Jury may be totally unaware of because you had so much stuff before the trial, the wranglings that we had, and the medical expenses, and why the doctor changed his mind and all of that.

So I guess maybe it's the one last frontier in comparative negligence to try to get it down so that there's nothing with the process that we can't fix.

And so, you know, on the just face of it, if I take the whole thing together, the issue was the fact she didn't go for three months, and blah, blah, blah, and that is always so hard for juries to understand.

They just–they're just suspicious about that. And it's so unfortunate because she, my gosh, she just suffered terribly having all these back injuries. But it's hard for them to make that connection when they wait for three months.

And then, you know, I don't know why the doctor changed his mind. There's absolutely no reason for him to say it wasn't a cause–

\*                                    \*                                    \*

THE COURT: Well, okay, on the whole thing, if I'm just going with the question, if I can support the jury's verdict, not on whether he caused the accident, but on whether we're looking at it as a whole, I find as thirteenth juror that I can support this verdict. Okay.

But I do think it really presents a question that we have to consider is how do we want to slice and dice it so that we know that's the answer because it is very confusing.

And I'm sorry that you-all had to go through all this, and come in at a late time. And for Ms. McCord [sic], I'm sure it's just not, there's no way she can ever understand this decision. So, it's very hard for her, and I'm sorry for her that she has to go through this. Okay. Thank you.[3]

When the trial court is called upon to act as the thirteenth juror upon the filing of a motion for a new trial, the trial court must be independently satisfied with the verdict of the jury. *Cumberland Tel. and Tel. Co. v. Smithwick*, 112 Tenn. 463, 79 S.W. 803 (Tenn. 1904). The Supreme Court's opinion reads in part:

---

[3] We quote from the record more extensively than do Appellants for the purpose of placing the trial court's comments in their full context.

The rule in civil cases is that, if the circuit judge is dissatisfied with the verdict of the jury, it is his duty to set it aside and grant a new trial, and that upon its being made to appear to this court, from statements made by the circuit judge in passing upon the motion for new trial, that he was really not satisfied with the verdict, it becomes the duty of this court, when it has acquired jurisdiction of the cause, to do what the circuit judge should have done; that is, to grant a new trial on the ground of the dissatisfaction of that judicial officer with the verdict. [Citations omitted.]

\*　　　　\*　　　　\*　　　　\*　　　　\*

The reasons given for the rule are, in substance, that the circuit judge hears the testimony, just as the jury does, sees the witnesses, and observes their demeanor upon the witness stand; that, by his training and experience in the weighing of testimony, and the application of legal rules thereto, he is especially qualified for the correction of any errors into which the jury by inexperience may have fallen, whereby they have failed, in their verdict, to reach the justice and right of the case, under the testimony and the charge of the court; that, in our system, this is one of the functions the circuit judge possesses and should exercise – as it were, that of a thirteenth juror. So it is said that he must be satisfied, as well as the jury; that it is his duty to weigh the evidence, and, if he is dissatisfied with the verdict of the jury, he should set it aside....

*Id*. at 804-05.

If the trial judge, when acting as the thirteenth juror, simply approves the verdict without any comment, it is presumed by an appellate court that he or she has performed his or her function adequately. ***Miller v. Doe***, 873 S.W.2d 346 (Tenn. Ct. App. 1993). Where the trial court makes comments in the course of reviewing a motion for a new trial, we will review those comments, but we do not review those comments to see if we agree with the trial court's reasoning but rather to determine whether the trial court properly reviewed the evidence and was satisfied or dissatisfied with the verdict. *Id*. at 347. If the trial judge makes comments which indicate that he or she has misconceived his or her duty or clearly has not followed it, this Court must reverse and remand the case for a new trial. *Id*.

In asserting that the trial judge failed to adequately perform her duty as thirteenth juror, Appellants rely, in part, upon our Supreme Court's decision in ***Holden v. Rannick***, 682 S.W.2d 903 (Tenn. 1984). In ***Holden***, the Court determined that the following comments from the trial court, when considered as a whole, indicated that the trial judge misconceived his duty as the thirteenth juror:

THE COURT: Well, of course, Mr. Jones, the Court doesn't substitute its judgment for that of the jury where the issue is fairly presented to the jury and in this case frankly I think it was. As I recall Dr. Rannick testified that this lady had an unholy and unnatural fear of having cancer.

\*          \*          \*          \*          \*

MR. JONES: May I ask if your Honor agrees with the verdict of the jury?

THE COURT: Yes, I do. ***The Court as I say does not substitute its judgment for that of the Plaintiff [sic] I would just as readily have agreed with the verdict the other way***. The verdict neither way would have shocked the Court frankly. I thought the issues were very fairly put to the jury. I thought each side had a fair and full day in court and the jury made its decision and I approved the verdict, expressly approved the verdict so I respectfully overrule.

*Id*. at 905 (emphasis added).

The Court reasoned that the trial judge's unequivocal statements that the court does not substitute its judgment for that of the jury, and that he would have also agreed with a contrary verdict, were "inconsistent with his duty to weigh the evidence and pass on the issues." *Id*. The Court said:

The trial judge stated that he expressly approved the verdict. It appears from the context of that statement, however, that he approved the verdict because he felt that the case was fairly presented and he was not shocked by the verdict, rather than because he reached the same verdict as the jury after independently weighing the evidence and passing upon the issues. Twice the trial judge stated that the court does not substitute its judgment for that of the jury. Those statements reveal a mistaken belief on his part that he was under no duty to pass upon the issues.

*Id*. at 905-906.

Although the trial judge's comments in the case at bar are somewhat confusing, we are unable to find that the judge improperly deferred to the judgment of the jury or failed to express exact approval of the rendered verdict. Unlike the trial judge in ***Holden***, the judge did not state that she could have just as easily approved a contrary verdict. The trial judge does not appear to be dissatisfied with the jury's verdict in this case; rather, through her circumlocutory comments,

-7-

the trial judge appears to be suggesting avenues for better presenting issues to a jury in terms of clarity and simplicity. In the end, however, the trial judge clearly notes her satisfaction with the verdict by stating that "I find as thirteenth juror that I can support this verdict."

Considered in their entirety, the judge's comments do not constitute a failure to carry out the duties required of a judge in his or her role as a thirteenth juror and, therefore, do not warrant a remand for new trial. The judge made no comments that could be construed as an inappropriate deferral to the jury's verdict or an unwillingness to invade the province of the jury. *Cf. Miller v. Doe*, 873 S.W.2d 346, 348-49 (Tenn. Ct. App. 1993) (trial judge's statement that "I'm not inclined to interfere with the verdict of the jury..." deemed an impermissible deferral to the jury's verdict); *Sherlin v. Roberson*, 351 S.W.2d 700, 701 (Tenn. Ct. App. 1976) (holding that trial judge's statement that he could not say the jury reached the right verdict amounted to impermissible deference to the jury's verdict as the judge was "disclaiming any opinion of his own"). Related to the concept of inappropriate deferral, the record contains no statements by the trial judge to suggest that she misunderstood or was unaware of her duty to independently weigh the evidence on the record. *See Heath v. Memphis Radiological Prof'l Corp.*, 2001 WL 1381278, at *4 (Tenn. Ct. App. Nov. 6, 2001) (finding that there was no evidence in the record to indicate that the trial judge failed to conduct an independent review of the evidence strengthened by the fact that the judge never stated that he was "not at liberty to substitute his judgment for that of the jury, as in *Holden*"); *cf. Miller*, 873 S.W.2d at 349 ("There is nothing in this record to indicate that the trial court approved the verdict for the reason that he had independently weighed the evidence, had passed on the issues presented to the jury, and reached the same verdict as the jury did.").

The record supports a finding that the trial judge was aware of the duties required of her in her role as thirteenth juror, and we conclude that she sufficiently carried out these duties. This issue is, therefore, without merit.

**Whether the jury verdict is contrary
to the weight of the evidence.**

It is well settled that the Court of Appeals does not re-weigh the evidence or reevaluate witnesses' credibility in an appeal from a jury verdict. *Grissom v. Metropolitan Gov't of Nashville*, 817 S.W.2d 679 (Tenn. Ct. App.1991). This Court, on appeal, is required to take the strongest legitimate view of the evidence favoring the prevailing party, discard all contrary evidence, allow all reasonable inferences to uphold the jury's verdict and set aside the jury verdict only when there is no material evidence to support it. Tenn. R. App. P 13(d); *see also Smith County v. Eatherly*, 820 S.W.2d 366 (Tenn. Ct. App.1991)); *Glover v. Oakwood Terrace Associated II*, 816 S.W.2d 43 (Tenn. Ct. App.1991). From our review of the entire record, we find that there is sufficient evidence from which the jury could have found this was an unavoidable accident and that there was no proximate negligence on the part of Barksdale. Consequently, this issue is without merit.

**Whether the Trial Judge erred in instructing
the jury on sudden emergency**.

Appellants assert that the trial court erred because "[h]aving sudden emergency in the instructions twice called undue attention to this part of the jury instructions." The relevant portions of the Jury Instructions read as follows:

T.P.I.-CIVIL 3.08

**SUDDEN EMERGENCY**

A person who is faced with a sudden or unexpected emergency that calls for immediate action is not expected to use the same accuracy of judgment as a person acting under normal circumstances who has time to think and reflect before acting. A person faced with a sudden emergency is required to act as a reasonably careful person placed in a similar position. A sudden emergency will not excuse the actions of a person whose own negligence created the emergency.

If you find there was a sudden emergency that was not caused by any fault of the person whose actions you are judging, you must consider this factor in determining and comparing fault.

\*                                          \*                                          \*

T.P.I.-CIVIL 3.52

**ADDITIONAL FACTORS FOR COMPARING FAULT**

The percentage of fault assigned to any person depends upon all of the circumstances of the case. The conduct of each person may make that person more or less at fault, depending upon all of the circumstances. In order to assist you in making this decision, you may consider the following factor(s) and you may also consider any other factors that you find to be important under the facts and circumstances. But the determination of fault on the part of any person and the determination of the relative percentage of fault, if any, are matters for you alone to decide.

1. Whose conduct more directly caused the injury to the plaintiff;

2. How reasonable was the person's conduct in confronting a risk, for example, did the person know of the risk or should the person have known of it;

3. Did the person fail to reasonably use an existing opportunity to avoid an injury to another;

4. Was there a sudden emergency requiring a hasty decision;

5. What was the significance of what the person was attempting to accomplish by the conduct.

When these sections mentioning sudden emergency are viewed in the context of the entire Jury Instructions, it does not appear that the trial court unduly emphasized Defendant's arguments based upon sudden emergency. Contrary to Appellants' argument, the trial court did not charge the jury twice on sudden emergency. The second mention of sudden emergency is found in the charge on "additional factors for comparing fault." This latter charge simply mentions the words "sudden emergency" as one of five factors to be considered by the jury in determining the applicable percentages of fault, if any. Furthermore, the trial court clearly instructed the jury that all of the instructions were to be considered as a whole and that the instructions should not be taken to indicate an opinion of the court on factual matters. When taken as a whole, we find that the Jury Instructions on sudden emergency were proper in light of the theories propounded by the parties. However, even if we allow that the trial court erred in mentioning the doctrine of sudden emergency a second time, we find that the error was harmless. This issue is, therefore, without merit.

**Whether the Trial Judge erred in instructing
the jury that a "phanton person's" violation of
T.C.A. § 55-8-170 was negligence per se.**

T.C.A. § 55-8-170 reads, in relevant part, as follows:

> **55-8-170. Putting glass, nails and other substances on highway prohibited–Penalty.–** (a) No person shall throw or deposit upon any highway any glass bottle, glass, nails, tacks, wire, cans or any other substance likely to injure any person, animal or vehicle upon such highway.
> (b) Any person who drops, or permits to be dropped or thrown, upon any highway any destructive or injurious material shall immediately remove the same or cause it to be removed.

Regarding this statute, the jury was instructed as follows:

**NEGLIGENCE PER SE**

> If you find that a party to this action violated the statute just read to you, you will find that the violation was negligence. Such a finding of negligence, however, does not require a finding against the party violating the statute unless you also find that the violation was the proximate cause of the injury or damage to another.

The standard for an appellate court's review of a trial judge's jury charge was stated in *City of Johnson City v. Outdoor West, Inc.*, 947 S.W.2d 855 (Tenn. Ct. App. 1996):

> We review the jury charge in its entirety to determine whether the trial judge committed reversible error. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992); *In re Estate of* Elam, 738 S.W.2d 169, 174 (Tenn. 1987); and *Grissom v. Metropolitan Gov't of Nashville*, 817 S.W.2d 679, 685 (Tenn. Ct. App. 1991). Jury instructions are not measured against the standard of perfection. *Grissom*, 817 S.W.2d at 685. The charge will not be invalidated if it "fairly defines the legal issues involved in the case and does not mislead the jury." *Otis*, 850 S.W.2d at 446; *Grissom*, 817 S.W.2d at 685. Furthermore, a particular instruction must be considered in the context of the entire charge. *Elam*, 738 S.W.2d at 174.

Appellants assert that the trial court's instruction to the jury create an inference of negligence on the part of a "phantom" non-party defendant. Since there was no proof of any negligence on the part of this phantom party, Appellants assert that this portion of the jury instructions was in error. We agree.

The fact that there were two pieces of aluminum duct work on the road at the time of the accident is undisputed in the record. The "phantom" third party theory was raised as an affirmative defense in Barksdale's Answer to the Deathridges' Complaint. However, the jury did not reach the question of fault on the part of anyone other than defendant. Thus, any error was harmless.

**The Trial Judge erred in failing to
direct a verdict for Plaintiffs**

Appellants assert that the trial court erred in failing to direct a verdict in their favor. Their contention is based upon the fact that Barksdale admitted fault at the scene of the wreck and never retracted that admission during his testimony.

When deciding a motion for directed verdict, both the trial court and the reviewing court on appeal must look to all the evidence, take the strongest legitimate view of the evidence in

-11-

favor of the opponent of the motion, and allow all reasonable inferences in favor of that party. The court must discard all countervailing evidence, and if there is then any dispute as to any material fact, or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied. *See Conatser v. Clarksville Coca-Coal Bottling Co.*, 920 S.W.2d 646, 647 (Tenn.1995); *Hurley v. Tennessee Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn.Ct.App.1995).

We agree with Appellants that Mr. Barksdale admits hitting the Deathridges' car, to wit:

> And I [Barksdale] all of a sudden, I realized that I'm not going to, you know, be able to stop, and I rear-ended Mrs. Deathridge's car.

However, our analysis in this case does not end with his admission. As the trial court correctly charged the jury, fault, in the instance of this case and as defined by Tennessee law, has two parts: negligence and legal or proximate cause. The particular facts in this case give rise to a dispute on the issue of negligence. Had there been no duct-work in the roadway, a directed verdict for Plaintiffs may have been appropriate. However, it is undisputed that there was material in the roadway at the time of this accident. The presence of that duct-work supports Mr. Barksdale's defense of sudden emergency and raises a dispute of material fact as to whether he acted with reasonable care, given the circumstances. This was a proper question for the jury. From the record in this case, it appears that the jury found that, under the particular facts of this case, the defendant-driver was exercising reasonable and ordinary care in the driving of his vehicle and that a collision with Plaintiffs' vehicle was an unavoidable accident. The trial court did not err in denying the motion for a directed verdict.

For the foregoing reasons, we affirm the Judgment of the trial court. Costs of this appeal are assessed against the Appellants, Elaine H. Deathridge and Louis D. Deathridge, and their surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.

-12-