# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### July 22, 2004 Session

## YVONNE FOSTER v. MOLLIS WILSON, ET AL.

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 92043-5     The Honorable Kay Robilio, Judge**

_____

### No. W2003-00872-COA-R3-CV - Filed September 9, 2004

_____

This case arises out of an automobile accident.  Appellant appeals from a Judgment entered on a jury verdict.  The jury found the two Defendants to each be 50% at fault and Plaintiff to be 0% at fault.  The jury awarded $0 damages to the Plaintiff.  We find that the trial court did not err in its duty as thirteenth juror and that there is material evidence to support the verdict.  We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Jerry Stokes and Theresa H. Patterson of Memphis for Appellant, Yvonne Foster
Melanie M. Stewart and Matthew S. Russell of Memphis for Appellee, Mollis Wilson
Andrew H. Owens of Memphis for Appellees, William R. Lilley and William Lucy, d/b/a Big Bear Towing

## MEMORANDUM OPINION[1]

On January 7, 1997, Yvonne Foster ("Appellant" or "Plaintiff") was a passenger in a vehicle driven by Mollis Wilson.[2]  Ms. Wilson's vehicle was involved in an accident with a Ford wrecker, owned by William A. Lucy d/b/a Big Bear Towing Company and driven by William R. Lilley.  On

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by Memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]We note Ms. Wilson is referred to as "Molly," "Mollie," "Mollis," and "Molis" in the record.  For the purposes of this opinion, we will use "Mollis," which is the name used in the Complaint.

December 17, 1997, Ms. Foster filed a Complaint against Mollis Wilson[3], William R. Lilley, William A. Lucy, individually and d/b/a Big Bear Towing Company (together, "Appellants" or "Defendants") for actual and compensatory damages resulting from the alleged negligence and negligence per se of Defendants.

On April 21, 1998, William R. Lilley and William A. Lucy d/b/a Big Bear Towing filed an Answer denying the material allegations of the Complaint and denying any liability for the accident. On June 10, 1998, Mollis Wilson wrote an Answer denying the negligence claim against her and asserting that the negligence of Mr. Lilley was the sole proximate cause of the accident.

The case was initially tried in Division VI of Circuit Court on September 14, 2001. After a five day trial, the jury returned a verdict awarding Ms. Foster $100,000 in damages and assessing fault as follows: Yvonne Foster, 40%; Mollis Wilson, 35%; William R. Lilley and William A. Lucy d/b/a Big Bear Towing, 25%. Ms. Foster filed a timely Motion for New Trial or Additur on September 27, 2001. The trial court granted the Motion for New Trial and denied the request for additur on October 5, 2001.

The case was then transferred to Division V for a new trial pursuant to Tenn. R. Civ. P. 59. The second jury trial began on January 27, 2003 and is the one from which the present appeal arises.

At the second trial, Ms. Foster offered evidence from several doctors who testified that she had lumbar facet syndrome, cervical facet syndrome, carpal tunnel syndrome, thoracic outlet syndrome and possible TMJ syndrome. Whether these injuries were the result of the collision is disputed. Ms. Foster also presented an MRI, the results of which show spondylosis, spinal stenosis and a bulging disk; these conditions pre-existed the accident, but were allegedly aggravated by the collision.

On January 30, 2003, the jury returned a verdict, finding Mollis Wilson 50% at fault and William Lilly and William Lucy d/b/a Big Bear Towing 50% at fault. The jury found Ms. Foster to be 0% liable, but awarded her $0 in damages.

Ms. Foster filed a "Motion for New Trial" on February 7, 2003. Pursuant to Tenn. R. App. 3(e), the Motion for New Trial specifically mentions each of the issues raised on appeal. The Motion for New Trial was denied by Order of March 28, 2003.

Ms. Foster appeals and presents three issues for review, as stated in her brief:

1. Whether the trial court failed to properly assume the role of thirteenth juror in denying Appellant's motion for new trial?

---

[3]Ms. Wilson died on January 28, 2000, from causes unrelated to the accident. An Administrator Ad Litem was duly appointed by the Probate Court of Shelby County, and, in an Order filed October 20, 2000, Joe Dae Jenkins, the Administrator Ad Litem, was substituted as a proper party for Ms. Wilson.

2. Whether the trial court erred in denying Appellant's motion for new trial when there was no material evidence to support an award of zero damages?

3. Whether the trial court erred by admitting into evidence surveillance videotape of the Appellant obtained by the Defendant on the eve of trial, the existence of which was not disclosed prior to the start of the trial proceeding, as required by T.R.C.P. 26?

**1. Whether the trial court failed to properly assume the role of thirteenth juror in denying Appellant's motion for new trial?**

Ms. Foster contends that the following statement by the trial judge, in denying her Motion for New Trial, denotes an implicit acknowledgment that the court "gave no independent consideration to the evidence . . . but deferred to the jury's determination," to wit:

> . . . And I didn't have an opportunity to deliberate, but I believe that [the verdict] is
> -- that their verdict is within that range of reasonableness."

Generally, the standard of review after a trial court has approved a jury's verdict is limited to a determination of whether there is any material evidence to support the jury's verdict. Tenn. R. App. P. 13(d). However, this standard is not applicable if the trial judge does not properly fulfill his or her duty as a thirteenth juror. *Washington v. 822 Corp.*, 43 S.W.3d 491 (Tenn. Ct. App. 2000). When the trial court is called upon to act as the thirteenth juror upon the filing of a motion for a new trial, the trial court must be independently satisfied with the verdict of the jury. *Cumberland Tel. And Tel. Co. v. Smithwick*, 79 S.W. 803 (Tenn. 1904). The Supreme Court's opinion reads in part:

> The rule in civil cases is that, if the circuit judge is dissatisfied with the verdict of the jury, it is his duty to set it aside and grant a new trial, and that upon its being made to appear to this court, from statements made by the circuit judge in passing upon the motion for new trial, that he was really not satisfied with the verdict, it becomes the duty of this court, when it has acquired jurisdiction of the cause, to do what the circuit judge should have done; that is, to grant a new trial on the ground of the dissatisfaction of that judicial officer with the verdict. [Citations omitted.]

> \*      \*      \*      \*

> The reasons given for the rule are, in substance, that the circuit judge hears the testimony, just as the jury does, sees the witnesses, and observes their demeanor upon the witness stand; that, by his training and experience in the weighing of testimony, and the application of legal rules thereto, he is especially qualified for the correction of any errors into which the jury by inexperience may have fallen, whereby they have failed, in their verdict, to reach the justice and right of the case, under the testimony and charge of the court; that, in our system, this is one of the functions the circuit judge possesses and should exercise--as it were, that of a thirteenth juror. So

it is said that he must be satisfied, as well as the jury; that it is his duty to weigh the evidence, and, if he is dissatisfied with the verdict of the jury, he should set it aside.

*Id.* at 804-05.

If the trial judge, when acting as the thirteenth juror, simply approves the verdict without any comment, it is presumed by an appellate court that he or she has performed his or her function adequately. *Miller v. Doe*, 873 S.W.2d 346 (Tenn. Ct. App. 1993). Where the trial court makes comments in the course of reviewing a motion for a new trial, we will review them. However, we do not review those comments to see if we agree with the trial court's reasoning but rather to determine whether the trial court properly reviewed the evidence and was satisfied or dissatisfied with the verdict. *Id.* at 347. If the trial judge makes comments which indicate that he or she has misconceived his or her duty or clearly has not followed it, this Court must reverse and remand the case for a new trial. *Id.*

In the interest of fairness, we quote more extensively from the record to place the trial court's comments, in denying the Motion for New Trial, in their proper context.:

> THE COURT: I tell you what, I've got the notes from the trial right in front of me, and I have reviewed them. I honestly believe that the jurors did not believe your client's version, and I do think it was a credibility issue.
>
> MS. PATTERSON: Your Honor, I understand that. We're asking Your Honor to sit as thirteenth juror, and as thirteenth juror if the verdict is contrary to the greater weight of the evidence –
>
> THE COURT: But I don't believe that it is. I don't believe that strongly. And I didn't have an opportunity obviously to deliberate, but I believe that it is – that their verdict is within that range of reasonableness.
>
> \*    \*    \*    \*
>
> And I do believe the jurors' verdict was within the range of reasonableness. In other words, I believe that there was sufficient proof to allow them to come to the conclusion that they reached. So I'm denying your motion.

Ms. Foster isolates a mere fragment of the trial judge's statement and interprets it as an expression of the willingness by the court to simply approve the jury's verdict or apply a "range of reasonableness" standard. From our reading of the trial judge's comments in context, we are unable to find that the judge improperly deferred to the judgment of the jury or failed to express exact approval of the rendered verdict.

-4-

The judge made no comments that could be construed, when placed in their proper context, as an inappropriate deferral to the jury's verdict or an unwillingness to invade the province of the jury. *Cf. Miller v. Doe*, 873 S.W.2d 346, 348-49 (Tenn. Ct. App. 1993) (trial judge's statement that "I'm not inclined to interfere with the verdict of the jury . . ." deemed an impermissible deferral to the jury's verdict); *Sherlin v. Roberson*, 551 S.W.2d 700, 701 (Tenn. Ct. App. 1976) (holding that the trial judge's statement that he could not say the jury reached the right verdict, nor could he say they reached the wrong verdict, amounted to impermissible deference to the jury's verdict as the judge was "disclaiming any opinion of his own"). Considered in their entirety, the judge's comments do not constitute a failure to carry out the duties required of a judge in his or her role as a thirteenth juror and, therefore, do not warrant a remand for new trial.

**2. Whether the trial court erred in denying Appellant's motion for new trial when there was no material evidence to support an award of zero damages?**

In personal injury cases, the amount of damages is primarily within the sound discretion of the jury. *Transports, Inc. v. Perry*, 414 S.W.2d 1, 5 (Tenn. 1967). The jury is guided by the rule that the injured plaintiff is "entitled to reasonable compensation for bodily injuries, pain and suffering, disability, loss of earnings and expenses." *Brown v. Null*, 863 S.W.2d 425, 430 (Tenn. Ct. App. 1993). Where, as here, a trial judge has approved a jury's verdict, our standard of review is whether there is any material evidence to support the verdict. Tenn. R. App. P. 13(d). Thus, absent a reversible error of law, we will set aside a judgment on a jury verdict only where the record contains no material evidence to support the verdict. *Foster v. Bue*, 749 S.W.2d 736, 741 (Tenn. 1988).

The jury's duty to assess damages necessarily requires a determination of the credibility of the witnesses at trial, and the jury is not bound to accept the medical testimony presented. *Baxter v. Vandenheovel*, 686 S.W.2d 908, 912 (Tenn. Ct. App. 1984); *see Karas v. Thorne*, 531 S.W.2d 315, 317 (Tenn. Ct. App. 1975) ("The fact a given amount is proven as undisputed medical expenses does not prove those expenses were necessary"). Additionally, when a physician's opinion is based on statements given him by the plaintiff as to when pain commenced, the plaintiff's credibility may weigh largely in a jury's acceptance or rejection of expert medical testimony. *See Baxter*, 686 S.W.2d at 912*.

Plaintiff relies upon the case of *Littles v. Laine*, No. 02A01-9806-CV-00148, 1999 WL 281311, (Tenn. Ct. App. May 7, 1999) where this Court reversed a judgment on a jury verdict for defendant where proof was introduced by the injured plaintiff that expenditures were made for medical treatment, but the jury awarded zero damages to the plaintiff. This Court, in reversing the trial court, relied upon the statement in *Newsom v. Marcus*, 588 S.W.2d 883 (Tenn. Ct. App. 1979):

> [I]t has been held that a party is entitled to recover reasonable medical expenses for examinations, etc., in an effort to determine if personal injuries were sustained as result of defendants [*sic*] negligence, even though it develops that the party suffered no personal injury. *See*

> *Comstock v. Ramirez* (Tex. Civ. App. 1975) 520 S.W.2d 475; *Wise v. Towse* (Mo. App. 1963) 366 S.W.2d 506; *Loret v. Armour & Co.* (La. App. 1947) 32 So.2d 55; *Whitney v. Akers*, 247 F.Supp. 763 (1965). . . . This expense flowed naturally from the tortious act of the defendant and is recoverable even though it be found by the injury that [the plaintiff] in fact suffered no injury.

*Id.* at 887.

The *Newsom* Court was faced with the question of inconsistent verdicts. The jury returned a verdict for the husband, suing for his wife's medical expenses, but returned a verdict of no damages for the wife. This Court in *Littles* apparently failed to give due weight to the jury's function in deciding credibility issues. In *Gibson v. Francis*, No. E2003-0226-COA-R3-CV, 2004 WL 1488541, (Tenn. Ct. App. June 30, 2004) the Eastern Section of this Court was faced with a similar situation where the jury returned a verdict for plaintiff for property damage and declined to make any award for damages for personal injuries. The Court stated:

> It was the duty and prerogative of the jury to assess the credibility of the witnesses, and the jury was at liberty to either believe or disbelieve the plaintiff's subjective complaints. The jury apparently chose not to believe the plaintiff's testimony regarding her pain, its origin, and/or its effect on her. If the jury disbelieved the plaintiff - apparently it did - then the plaintiff failed to establish her personal injury claim by a preponderance of the evidence. As a consequent of this, there is material evidence to support the jury's verdict.

*Gibson* at *7.

The record, as a whole, indicates that there was ample evidence in this case from which a jury could find that the plaintiff was untruthful in every aspect of her case. Her testimony was undoubtedly discounted as to her alleged injuries and the pre-existing injuries that she had sustained. Under these circumstances, the jury correctly assessed the plaintiff's credibility and determined she sustained no injuries whatsoever in the accident for which suit was brought.

**3. Whether the trial court erred by admitting into evidence surveillance videotape of the Appellant obtained by the Defendant on the eve of trial, the existence of which was not disclosed prior to the start of the trial proceeding, as required by T.R.C.P. 26?**

On January 27, 2003, the day of opening statements, counsel for Defendants disclosed that, through a private investigator, he had obtained video surveillance of Ms. Foster taken the previous weekend. The videotape shows Ms. Foster moving about on her front porch, and, at one point, leaning slightly to spit off the porch. Defendants' attorney claimed that he had first seen the

videotape "today at nine o'clock" and purported to use the tape to impeach Ms. Foster at trial. Counsel for Ms. Foster objected on the grounds that the videotape violated Tenn. R. Civ. P. 26.05(2) and Tennessee Rules of Evidence 403. The trial court allowed counsel for Ms. Foster the opportunity to view the videotape prior to Ms. Foster's testifying and made the following relevant statements concerning whether the videotape would be admitted:

> the tape was not coming in, all things being equal unless [Ms. Foster's] testimony ran counter, or her credibility was put in issue by her testimony, if what she testifies to on the witness stand does not comport with what I heard during the time of this taping. In other words, if she says I didn't do this, and she did it, or I did do this, and she didn't, then that puts her credibility at issue and I said that – that I would allow.

On January 28, 2003, Ms. Foster testified as follows:

Q. Does your level of pain always stay the same, or does it vary, Ms. Foster?

A. It varies a little. On a day like today, it is raining, my pain increases because the weather causes my muscles to tighten up more.

Q. Had you had any day since this accident that you could say you were pain-free?

A. No. I cannot say that I have had a day that I was pain-free since the accident, no.

\* \* \* \*

Q. And, of course, we can't help but notice during this trial that – that when you walk back and forth from the witness stand you are using that cane, correct?

A. Correct.

Q. And you're walking very slowly, laboriously with – and relying heavily on that cane; isn't that correct?

A. Yes, sir.

Q. And moving very slowly and – and – your – and one can just look at you and see that you're in pain when you walk across this courtroom, correct?

A. Yes, sir.

Q. And one can look at you when you're seated here and see that you're in pain or

-7-

just seated; isn't that correct?

A. Yes, sir.

Q. And your testimony is that you – that varies very little.  In other words, that is the way we are going to find you at any time; isn't that correct?

A. The majority of the time, sir –

Q. What about –

A. – except when I am sleeping.

Q. What about this past – what about the 25th of this month.  Today is the 28th. What about Saturday?  Weren't you able – weren't you able to move about your house without your braces and your cane, normally?

A. For a while –

Q. Oh, so –

A. – without my braces.

* * * *

A. The majority of the time, I have my cane, even walking in the house.

Q. But you – but you admit that Saturday, in the morning, you were able to – you were able to move about outside your home briskly, quickly, and much quicker than you moved in this courtroom.

A. Saturday?

Q. Yes.

A. I don't believe so, sir.

* * * *

Q. Do you recall coming out of the house and moving quickly, as though you were not – and walking five to eight feet away from your house and moving as though you were not in any pain at all?

-8-

A. No, sir.

*     *     *     *

Q. Okay. So any time you bend forward, you are going to be in pain; is that correct?

A. Yes, sir.

Q. And it is going to show on your face; is that correct?

A. Yes, sir.

Q. Okay. Do you remember shortly after 11:48 or thereabouts, coming outside for the sole purpose of bending over and spitting?

A. No. I don't think I bent over, sir.

Q. Okay.

A. In fact, I know I didn't.

Q. Just bent over a little bit –

A. No, sir.

Q. – to spit?

A. No.

Q. You didn't do that?

A. No, sir.

Q. Okay. But if you had done that, because of the condition you're in, you would have been in a lot of pain; is that right?

A. Yes, sir.

Q. Okay. And it would have been obvious. It would have shown, wouldn't it? Like it has shown in this courtroom; isn't that correct?

A. Yes, sir.

Following this testimony, Defendants' counsel moved to show the videotape to the jury, reasoning that Ms. Foster's credibility had been put into issue by her own testimony and that the criterion for admission of the tape, *see supra*, had been met. The following morning, January 29, 2003, at the commencement of proceedings, the trial court ruled that the videotape could come into evidence because the tape contradicted Ms. Foster's testimony. During the same proceeding, both sides and the trial court conducted a voir dire examination of Ms. Foster as to whether the videotape gave a fair portrayal of her movements on the previous Saturday. The videotape was then played for the jury.

It is well settled that the trial court is afforded wide discretion in the admission or rejection of evidence, and the trial court's action will be reversed on appeal only when there is a showing of an abuse of discretion. *See Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439 (Tenn. 1992); *Davis v. Hall*, 920 S.W.2d 213, 217 (Tenn. Ct. App. 1995).

From examining the testimony of Ms. Foster and the videotape exhibit, we find that the trial court did not abuse its discretion in allowing the videotape to be admitted into evidence. The decision to admit the videotape came after extensive arguments from both sides, spanning several days. The trial court viewed the tape many times and weighed its probative value. The trial court allowed Ms. Foster to testify about her activities on the videotape. Only after it was apparent that Ms. Foster's testimony contradicted the tape's contents did the trial court admit the videotape.

Ms. Foster also claims that counsel for Defendants "had knowledge of the existence of an additional person having knowledge relevant to the Complaint as early as January 21, 2003," and thus was required to disclose the identity of this person under Tenn. R. Civ. P. 26.05, which reads, in relevant part:

> A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows:
>
> \*       \*       \*       \*
>
> (2) A party is under a duty seasonably to amend a prior response if the party obtains information upon the basis of which the party (A) knows that the response was incorrect when made, or (B) knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

Ms. Foster contends that counsel for the Defendants violated this rule by concealing his retainer of a private investigator to videotape Ms. Foster. On January 22, 2004, the trial court asked counsel for Big Bear Towing, Inc. if he had any surprise documents. Counsel then responded that

-10-

"any surprises that I have will also be a surprise to me is my point." The record indicates that, at that point, Defendants' counsel had already retained the private investigator, Greg Hill. However, the uncontested testimony of Mr. Hill is that he had no footage of Ms. Foster until January 25, 2003:

Q. Okay. So you went out there on the 23rd; is that right?

A. I went on the 23rd.

Q. What time did you get out there, Mr. Hill?

A. I started approximately 7:00, somewhere shortly thereafter, in the morning.

Q. Okay. How long did you stay out there?

A. Approximately 8 hours.

Q. Okay. Did you see Ms. Foster on that day, sir?

A. No, I did not.

Q. Did you go out there on the 24th of January '97?

A. Yes, sir.

Q. What time did you get out there?

A. Approximately 7:00, 7:15 a.m.

Q. How long did you stay out there?

A. Approximately eight hours.

Q. Did you see Ms. Foster out there?

A. No, I did not.

Q. Did you have your video camera running?

A. I had a video camera, but I didn't have an opportunity or occasion to utilize the videotape.

Q. And on the 23rd, you had your video camera ready as well; is that right?

-11-

A. Yes, sir.

Q. On the 25th of January, 1997, did you go out to Ms. Foster's house on that day?

A. Yes, I did.

Q. What time did you get out there?

A. Approximately 7:15.

Q. How long did you stay out there?

A. Approximately 3:15.

Q. Did you see Ms. Foster?

A. Yes, I did.

From the evidence in the record, we find that defense counsel did not violate Rule 26. Although counsel hired the private investigator as early as January 21, 2003, defense counsel did not know whether the investigator would have knowledge relevant to the case or that any previous statements were no longer true until he received the videotape on January 27, 2003 or at the earliest when the tape was made on January 25, 2003. After learning that information on the tape could be relevant to the case, defense counsel seasonably informed the trial court and opposing counsel.

For the foregoing reasons, the trial court's judgment on the jury verdict is affirmed. Costs of this appeal are assessed against the Appellant, Yvonne Foster, and her surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.